# Exhibit A



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

| LETITIA JAMES | DIVISION OF ECONOMIC JUSTICE |
|---|---|
| ATTORNEY GENERAL | BUREAU OF INTERNET & TECHNOLOGY |

October 12, 2023

**VIA EMAIL**

Michael Ellis, Esq.
General Counsel and Corporate Secretary
Rumble Inc.
444 Gulf of Mexico Drive
Longboat Key, FL 34228

Re:   <u>Removing Calls for Violence on the Rumble Platform</u>

Dear Mr. Ellis:

In the wake of the horrific terrorist attacks in Israel, there have been reports of growing antisemitism and Islamophobia, including threats of violence against Jewish and Muslim people and institutions.  We have also become aware of press reports that terrorist groups and individuals that sympathize with them are disseminating calls for violence and other materials that may incite violence against Jewish and Muslim people and institutions on social media platforms. We are deeply concerned about this activity in light of the tragic history of such calls for violence. We would like to better understand how Rumble is ensuring that its platform (the "Platform") is not being used to incite violence and further terrorist activities, including by describing how the company is identifying, removing, and blocking the re-uploading of such content.

We request that you promptly respond to the following questions by October 20, 2023.

1. What actions, if any, has the company taken to address the recent calls for violence against Jewish and Muslim people and institutions and the possibility that the Platform may be used to plan, encourage, or disseminate those acts?

2. Describe in detail the public-facing terms of service, community rules, or other policies that prohibit users from using your Platform to disseminate calls for violence, including copies of any documentation or policies.

3. Describe in detail the company-facing policies that govern the determination of whether content is a call for violence that should be removed, including copies of any documentation and policies.

4. Describe in detail the company's process for reviewing and removing calls for violence in response to reports from Platform users, including copies of any internal documentation.

5. Describe in detail the company's process for identifying and removing calls for violence other than in response to reports from Platform users, including copies of any internal documentation.

6. Describe in detail the company's methods for identifying and removing additional copies of content that has been removed as a result of the processes described in response to Question 4 and Question 5.

7. Describe in detail the company's methods for blocking the re-posting of content that has been removed as a result of the processes described in response to Question 4, 5, and 6.

8. Describe in detail the company's policies regarding disciplining, suspending, and/or banning users for posting content that has been removed as a result of the processes described in response to Question 4 and Question 5.

9. Describe in detail whether content that has been removed as a result of the European Union's Digital Service Act is removed globally or whether such content remains accessible to users in the United States.

10. Explain whether the company has used the Global Internet Forum to Counter Terrorism hash-sharing database to identify content on the Platform calling for violence.

11. For all questions above, please identify the company or affiliate group responsible for such processes, including but not limited to the organizational chart for such group and the number of full and part-time employees in such group.

Please contact Jordan Adler at jordan.adler@ag.ny.gov or 212-416-6307 if you have any questions.

Sincerely,

*Letitia James*

Letitia James

# Exhibit B

10/24/23, 10:49 AM    Attorney General James Calls on Social Media Platforms to Provide Answers after Terrorist Attacks in Israel Spark Violent Threats Online

Case 1:22-cv-10195-ALC   Document 38-1   Filed 10/25/23   Page 5 of 20

Office of the New York State Attorney General       Translate



### Letitia James
New York State Attorney General

Home

Press Releases

Attorney General James Calls On Social Media Platforms To Provide Answers After Terrorist Attacks In Israel Spark Violent Threats Online

# Attorney General James Calls on Social Media Platforms to Provide Answers after Terrorist Attacks in Israel Spark Violent Threats Online

## October 13, 2023

NEW YORK – New York Attorney General Letitia James sent a series of letters to social media companies requesting they provide detailed explanations of the steps they are taking to stop the spread of hateful content encouraging violence against Jewish and Muslim people and institutions in the wake of terrorist attacks in Israel. The letters, sent to Google, Meta, X (formerly Twitter), TikTok, Reddit, and Rumble, provide a list of questions for each platform to respond to regarding how they are specifically addressing calls for violence that have rapidly spread in the past week.

"In the wake of Hamas' unspeakable atrocities, social media has been widely used by bad actors to spread horrific material, disseminate threats, and encourage violence," said **Attorney General James**. "These platforms have a responsibility to keep their users safe and prohibit the spread of violent rhetoric that puts vulnerable groups in danger. I am calling on these companies to explain how they are addressing threats and how they will ensure that no online platform is used to further terrorist activities."

10/24/23, 10:49 AM | Attorney General James Calls on Social Media Platforms to Provide Answers after Terrorist Attacks in Israel Spark Violent Threats Online

Case 1:22-cv-10195-ALC Document 38-1 Filed 10/25/23 Page 6 of 20

After recent terrorist attacks in Israel, reports have identified antisemitic and Islamophobic threats spreading online, including an Anti-Defamation League report documenting a surge in antisemitic threats and conspiracies spreading on social media following the Hamas attacks. The letters from Attorney General James request that social media companies explain in detail how their content moderation policies and terms of service are being used to limit hate-based threats and reduce the likelihood that the platforms are used to plan acts of violence. The letters also ask the companies to explain:

- What actions, if any, they have taken to address the recent calls for violence against Jewish and Muslim people and institutions;
- What actions they have taken to address the possibility that their platforms may be used to plan, encourage, or disseminate acts of violence;
- The public-facing terms of service, community rules, or other policies in place that prohibit users from utilizing the platform to disseminate calls for violence;
- Details of internal policies that govern the determination of whether content is a call for violence that should be removed;
- Policies regarding disciplining, suspending, and/or banning users for posting content that has been removed for spreading calls for violence.

Attorney General James has consistently taken action to hold social media companies accountable and limit dangerous material from spreading online. This week, Attorney General James advanced legislation to protect children from addictive social media features that could introduce them to harmful content. In July, Attorney General James led a multistate coalition defending the federal government's ability to communicate with social media companies about the spread of dangerous content on their platforms. In October of 2022, Attorney General James released a report on the role that social media platforms played in the Buffalo mass shooting and online extremism. In 2021, Attorney General James joined a multistate coalition investigating Meta for providing and promoting the social media platform Instagram to children and young adults despite knowing that such use is associated with physical and mental health harms.

10/24/23, 10:49 AM                    Attorney General James Calls on Social Media Platforms to Provide Answers after Terrorist Attack in Israel Spurs Violent Threats Online

Case 1:22-cv-10195-ALC   Document 38-1   Filed 10/25/23   Page 7 of 20

# Letitia James
## New York State Attorney General

  

**Contact**

Office of the New York State Attorney General

The Capitol

Albany NY 12224-0341

Phone: 1-800-771-7755

Statewide Offices

Press Releases

File a Complaint

Employment Opportunities

Copyright © 2023 — Office of the New York State Attorney General. All Rights Reserved.

Privacy Policy | Disclaimer | Accessibility Policy

**Translation Services**

This page is available in other languages

**Translate**

# Exhibit C



October 18, 2023

**Sent Via Email to judith.vale@ag.ny.gov and jordan.adler@ag.ny.gov**
Letitia James, Attorney General for the State of New York
Judith Vale, Deputy Solicitor General for the State of New York
Jordan Adler, Senior Enforcement Counsel
Office the New York State Attorney General
28 Liberty Street
New York, New York 10005

    Re:    *Volokh v. James*, No. 22 Civ. 10195 (S.D.N.Y): Demand to rescind October 12, 2023 investigation letters seeking social-media platform policies and actions related to removing third-party-posted "materials that may incite violence"

Dear Attorney General James, Ms. Vale, and Mr. Adler:

    I am an attorney at the Foundation for Individual Rights and Expression and counsel for Rumble Canada Inc. (Rumble) in the above-referenced litigation. I am writing to demand the immediate and unequivocal retraction of your October 12, 2023 investigation letters to six internet platforms, including Rumble (collectively referred to as the Investigated Platforms). These letters violate (1) a federal district court's injunction against the enforcement of New York General Business Law § 394-ccc (the Online Hate Speech Law); (2) the active stay of all proceedings in that case as to Rumble; and (3) the First Amendment rights of the Investigated Platforms and their users.

    Your letter set a deadline of October 20, 2023, for Rumble's response. If you do not rescind your letter by then, we will be required to file a motion with the district court to enforce the terms of the preliminary injunction and stay of the proceedings.

    As the Attorney General's Office knows, Rumble, in addition to Locals Technology Inc. (Locals) and Eugene Volokh, is a plaintiff in a lawsuit against Attorney General James challenging New York's Online Hate Speech Law. The law targets "hateful" speech across the internet—defining "hateful" content as that which may "vilify, humiliate, or incite violence against" ten protected classes—requiring websites to develop and publish hate-speech policies and reporting mechanisms, and to respond to reports of hate speech. But Judge

New York Attorney General Letitia James
October 18, 2023
Page 2 of 10

Andrew Carter of the U.S. District Court for the Southern District of New York enjoined enforcement of the law, including the law's investigation and enforcement provisions. *Volokh v. James*, No. 22 Civ. 10195, 2023 WL 1991435 (S.D.N.Y. Feb. 14, 2023).

The October 12th letters "request" information about the Investigated Platforms' editorial policies, processes, and decisions for content that "may incite violence." At a minimum and on their face, the letters plainly seek to allow the Office to "take proof and make determinations of fact" under the Online Hate Speech Law. And according to your October 13th press release, the letters go further by demanding that the Investigated Platforms disclose their actions to "stop the spread of hateful content" and "violent rhetoric," in a transparent effort to get them to "remove" protected speech.[1] Because these demands, compounded by their vague references to hateful or violent speech, are within the scope of the Online Hate Speech Law's investigation provision,[2] they violate the district court's injunction. *Volokh*, 2023 WL 1991435 at *1.

Rumble abhors violence, antisemitism, and hatred, and is horrified by the October 7th Hamas attacks on Israeli civilians. However, federal court orders and the First Amendment prohibit any investigation under the Online Hate Speech Law or any attempt to burden the protected speech of the Investigated Platforms and their users. Rumble, therefore, demands that the Attorney General rescind the October 12, 2023 investigation letters immediately. And in any event, in response to a similar June 2022 letter from the Attorney General's Office, Rumble already provided its content-moderation policies, which expressly prohibit the posting of content that promotes violence, illegal activities, and harm or injury to any group, including antisemitism. The policies, which are available online[3], speak for themselves, and Rumble respectfully declines to respond further at this time.

---

[1] As discussed further below, the Attorney General's letter targets any "calls for violence," regardless of whether they rise to the level of constitutionally unprotected incitement or not. Letitia James, *Attorney General James Calls on Social Media Platforms to Provide Answers after Terrorist Attacks in Israel Spark Violent Threats Online New York State Attorney General* (Oct. 13, 2023),https://ag.ny.gov/press-release/2023/attorney-general-james-calls-social-media-platforms-provide-answers-after. [https://perma.cc/S2LU-KSJH]

[2] *See* N.Y. Gen. Bus. Law § 394-ccc(5).

[3]*See* Rumble Website Terms and Conditions of Use and Agency Agreement
 *https://rumble.com/s/terms* [https://perma.cc/EW44-B7LG ]

**After Rumble Sues and Secures an Injunction, the Attorney General Nevertheless Seeks Information About Rumble's Editorial Decision-Making.**

>   A.   **Rumble sues and secures a preliminary injunction of New York's Online Hate Speech Law.**

Last year, New York adopted the Online Hate Speech Law, which requires a vast array of websites to develop and publish a "reporting mechanism" and "policy" on their websites regarding the reporting of and responses to user-created "hateful" content—defined as speech that may "vilify, humiliate, or incite violence against a group" based on ten protected class statuses. N.Y. Gen. Bus. Law § 394-ccc(1)(a). The law also requires websites to provide direct responses to any person reporting "hateful" content. *See id.* § 394-ccc(2-3). Notably, the law empowers the New York Attorney General to "take proof and make a determination of the relevant facts" as necessary to investigate violations. The Attorney General is authorized to assess daily civil fines for violations. *Id.* § 394-ccc(5). Attorney General James hailed the law's passage, noting that "social media platforms provide an unchecked vehicle for [] dangerous and corrosive *ideas* to spread." *See* Verified Complaint ¶ 45 (2d Cir. Joint Appendix 19) (emphasis added).

On December 1, 2022, Rumble, Locals, and Professor Eugene Volokh challenged the Online Hate Speech Law as an unconstitutional content- and viewpoint-based regulation that compelled platforms to endorse the State's definition of hate speech and unlawfully burdened platforms that refused to remove speech the state disfavored. Plaintiffs also argued the law was impermissibly overbroad and vague. The federal lawsuit named Attorney General James in her official capacity as the chief law enforcement agent of the State of New York, and the plaintiffs moved for a preliminary injunction to block enforcement of the law.

On February 14, 2023, after full briefing and oral argument, Judge Carter enjoined enforcement of the Online Hate Speech Law. Judge Carter found that the law:

> both compels social media networks to speak about the contours of hate speech and chills the constitutionally protected speech of social media users, without articulating a compelling governmental interest or ensuring that the law is narrowly tailored to that goal.

*Volokh*, 2023 WL 1991435 at *1. The court recognized that websites and social media networks, including Rumble (as well as Locals and Professor Volokh's legal blog), "are publishers and curators of speech, and their users are engaged in speech by writing, posting, and creating content." *Id.* at *9. The Online Hate Speech Law, therefore, "fundamentally implicates the speech of the networks' users," too. *Id.* Because "the First Amendment protects individuals' right to engage in hate speech, and the state cannot try to inhibit that right, no matter how unseemly or offensive that speech may be to the general public or the state," *id.*, and the law was not narrowly tailored to regulate only categories of unprotected speech, *id.* at *8 n. 3, Judge Carter held that the Online Hate Speech Law is likely to have "a profound chilling effect" on protected expressive activity. In fact, he deemed the law's burden on Rumble, Locals, and Volokh and their users to be "particularly onerous" because their "websites have dedicated 'pro-free speech purposes.'" *Id.* at *16–17. On this basis, the district court enjoined any enforcement of § 394-ccc.

One month later, the State appealed the district court's decision to the U.S. Court of Appeals for the Second Circuit. The following day, the State sought to stay all discovery and other litigation deadlines pending appeal—but did *not* seek to stay the injunction. The district court granted the motion to stay—over Rumble, Locals, and Volokh's written objection—until 30 days after the conclusion of all appeals of the preliminary injunction. *Volokh,* No. 22 Civ. 10195 Order, ECF No. 37. Briefing is now complete in the Second Circuit and the case is awaiting oral argument to be scheduled. The injunction against § 394-ccc's enforcement remains in effect.

**B.    Attorney General James demands that Investigated Platforms respond to intrusive questions and provide internal documents related to editorial decision-making.**

On October 7, Hamas militants broke through the wall separating Israel and Gaza and engaged in deadly attacks on hundreds of civilians. As announced by press release on October 13, 2023, Attorney General James responded to the attacks by demanding that the Investigated Platforms explain "the steps they are taking to stop the spread of hateful content encouraging violence against Jewish and Muslim people." *See* Press Release*, supra* note 1. Attorney General James also accused "social media" of being "widely used by bad actors to spread horrific material, disseminate threats, and encourage violence," and called on the Investigated Platforms "to keep their users safe and prohibit the spread of violent rhetoric that puts vulnerable groups in danger." The Attorney General's press release also notes that the investigation letters are part and parcel of her

repeated "action[s] to hold social media companies accountable and limit dangerous material from spreading online."

Specifically, the investigation letters, titled "Removing Calls for Violence on the [Investigated Platforms]," contain a number of intrusive interrogatories regarding the platforms' policies, processes, and actions related to third-party content that "may incite violence" against particular ethnic and religious minorities—Jewish and Muslim people. The interrogatories demand, for example, that each platform detail "how the company is identifying, removing, and blocking the re-uploading of," how they respond to user reports of, and how they are "disciplining, suspending, and or banning users for posting" this hateful content. In addition, the investigation letters include ten references to "removing" content in the two-page letter, and repeatedly seek policies related to "identifying" and "blocking" posted content based on the hateful ideas they communicate—exactly the types of investigatory demands the district court's injunction, its ordered stay, and the First Amendment prohibit.

## II.   The State's Investigation Letters Violate the Injunction and Stay of Discovery in *Volokh v. James*.

The investigation letters represent an end-run around the proceedings in *Volokh v. James* by the Attorney General's Office. The attempt "to take proof and make a determination of the relevant facts" regarding the Investigated Platforms' measures related to "hateful" content as contemplated by the Online Hate Speech Law violates the preliminary injunction and constitutes improper discovery in violation of the stay order.

### A.   The State's investigation letters seek information within the scope of the enjoined Online Hate Speech Law.

The State seeks information that is essentially identical to the information that is the subject matter of the Online Hate Speech Law, and through the same method of investigation contemplated by the law. Subsection (5) of the statute authorizes the Attorney General "to take proof and make determinations of relevant facts" related to what the law defines as "hateful" content—namely, website policies regarding the reporting of and response to online content that may "vilify, humiliate, or incite violence against" particular protected groups. The investigation letters explicitly demand the Investigated Platforms provide their policies, editorial decision-making practices, and actions related to content that "may incite violence" against Jewish and Muslim people. This is the exact information that the Online Hate Speech Law authorizes the State "to take

New York Attorney General Letitia James
October 18, 2023
Page 6 of 10

proof and make determinations of relevant facts." And this provision, like the entirety of the Online Hate Speech Law, is enjoined from enforcement. *Volokh*, 2023 WL 1991435, at * 10. Indeed, the investigation letters do not explicitly invoke any legal authority under which the State is demanding information and internal documents from the Investigated Platforms—perhaps because the implicit statutory authority has been enjoined.

The Attorney General's rhetoric in her October 13th press release also demonstrates that the State is attempting to exercise its investigation authority provided by the now-enjoined Online Hate Speech Law. The press release explicitly mentions Investigated Platforms' responsibility for "hateful content." Consistent with the Attorney General's 2022 comments, the release notes her mission "to hold social media companies accountable and limit dangerous material from spreading online." And like the legislators who argued in support of the Online Hate Speech Law, the Attorney General argues that Investigated Platforms must "keep their users safe" by "prohibit[ing] the spread of violent rhetoric that puts vulnerable groups in danger"—the exact subject matter of the Online Hate Speech Law.

The investigation letters represent an exercise of the State's authority to "take proof," and therefore violate the Southern District of New York's preliminary injunction. The letters must be rescinded immediately.

**B.     The State cannot circumvent a court-ordered stay of discovery through public shaming of its party opponent.**

Insofar as the State seeks from Rumble non-public information that would be available only through discovery in *Volokh v. James*—or through enforcement of the Online Hate Speech Law, which, as noted above, is currently enjoined—the investigation letters violate the district court's stay insisted upon by the State. The State sought a stay "to further district court proceedings in the interest of judicial economy." ECF No. 36 at 1. The State predicted that, in the absence of a stay, "at a minimum," it would seek discovery about "whether the suing Plaintiffs are properly within the Statute[.]" *Id.* at 3. Thus, the State argued for the district court to stay the case pending appeal "to avoid unnecessary jurisdictional discovery." *Id.* at 4. The district court agreed and ordered the clerk of court to "mark this case as stayed." ECF No. 37.

While it should not need to be said, litigants cannot propound discovery while recognizing no obligation to *respond to* discovery while a case is stayed. But the Office of the New York Attorney General has done just that with its letters,

and even taken a further step—sending public demands meant to shame a party-opponent into providing discoverable information despite a court-ordered stay.[4] Rumble will not succumb to any public-pressure campaign or honor the State's interrogatories meant to circumvent the court-ordered stay of all proceedings in *Volokh v. James*.

### III. The State's Investigation Letters Unconstitutionally Burden the First Amendment Rights of the Investigated Platforms and Their Users.

Further, the October 12th investigation letters unconstitutionally burden the Investigated Platforms' publication of First Amendment-protected content and the protected speech of third-party content creators. The First Amendment protects the rights of internet platforms as publishers of third-party content. Like newspapers and bookstores, websites have a First Amendment right to maintain the autonomy of their editorial judgment and discretion "in the selection and presentation of" content provided to the public. *NetChoice, LLC v. Att'y Gen. Fla.*, 34 F.4th 1196, 1210 (11th Cir. 2022), *cert. granted in part sub nom. Moody v. Netchoice, LLC*, No. 22-277, 2023 WL 6319654 (U.S. Sept. 29, 2023), and *cert. denied sub nom. Netchoice v. Moody*, No. 22-393, 2023 WL 6377782 (U.S. Oct. 2, 2023); *see Miami Herald Publ'g. Co. v. Tornillo*, 418 U.S. 241, 258 (1974) (compelled speech law struck down "because of its intrusion into the function of editors").

Similarly, the First Amendment protects content creators and users from governmental burdens that are likely to chill their speech—exactly what the State's investigation letters seek to accomplish with their broad, vague, and inherently subjective language, coupled with references to removing content and "disciplining, suspending, and/or banning users." As the court said in *Volokh*, "the state's targeting and singling out of [particular] speech for special measures certainly could make social media users wary about the types of speech they feel free to engage in without facing consequences from the state." *Volokh*, 2023 WL 1991435, at *10; *see also Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 68 (1963) ("People do not lightly disregard public officers' thinly veiled threats to institute . . . proceedings against them if they do not come around.").

---

[4] In addition, the October 12th letter was sent to Rumble, a party represented by FIRE in an ongoing litigation against the New York Attorney General that is directly related to the subject matter of the Attorney General's letter. As the Attorney General knows, rules of professional conduct prohibit lawyers from communicating with an opposing party that the lawyer knows to be represented about the subject of the representation. *See* N.Y. R. Prof. Cond. 4.2.

  The State's investigation letters—though styled as information requests—nevertheless signal that the Investigated Platforms should remove "hateful content" and ban "violent rhetoric." The letters, after all, are titled "*Removing* Calls for Violence on the [company] Platform."[5] (emphasis added). The word "remove," or variations of it, appears 10 more times in the two-page letter, with repeated references to "identifying" and "blocking" disfavored content. Combined with the Attorney General's October 13th press release and her past rhetoric, the Investigated Platforms can draw only one conclusion: The chief law-enforcement agent in New York, with vast resources at her disposal, wants what she determines to be "hateful content" and "violent rhetoric" related to Jewish and Muslim people removed from online platforms—and there may be legal consequences if platforms do not do so to the State's satisfaction. This conclusion requires the Investigated Platforms, among others, to "steer far wider" in their content removal than they otherwise would to avoid the legal threat. *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972).

  The investigation letters are centered around the dissemination of "calls for violence" and "other materials that may incite violence," exacerbating their First Amendment burdens by their use of these phrases and similarly overbroad, vague, and inherently subjective language. The State fails to define these phrases or terms, and thus fails to inform the Investigated Platforms of the type of conduct or speech that could be encapsulated by them. We are therefore forced to wonder, would a video created by a pro-Israeli activist calling for bombing Gaza qualify as a "call for violence"? Is a news report including a quotation from a pro-Palestinian protestor defending Hamas attacks on Israeli military equal to "disseminating calls for violence and other materials that may incite violence"? Do the statements of American elected officials, such as Representative Cori Bush's October 9th call to "end[] U.S. support for Israeli military occupation and apartheid"[6] or Senator Lindsey Graham's October 10th statement that "[w]e're in a religious war . . . do whatever the hell you have to do to defend yourself. Level the Place!"[7] qualify as speech that "may incite violence" or "encourage" violence?

---

[5] The Attorney General's website features a copy of the letter with the name of the company redacted. *See* https://ag.ny.gov/sites/default/files/letters/ag-james-letter-socialplatforms.pdf.

[6] Mark Maxwell, *U.S. Rep. Cori Bush Calls to End Military Aid to Israel*, KSDK News (Oct. 9, 2023), https://www.ksdk.com/article/news/politics/national-politics/us-rep-cori-bush-calls-end-military-aid-to-israel/63-c48f7cf4-0102-4c15-88d0-f123bfd33782. [https://perma.cc/T3C9-ZHKT]

[7] Ja'han Jones, *Republicans Deploy Dangerous Rhetoric Around Israel-Hamas War*, MSNBC (Oct. 12, 2023), https://msnbc.com/the-reidout/reidout-blog/israel-hamas-war-lindsay-graham-marco-rubio-rcna120172. [https://perma.cc/B4LH-L9SZ]

Just as § 394-ccc was preliminarily enjoined as likely to violate the First Amendment—because it inhibits protected expression with viewpoint-discriminatory, overbroad, and vague speech regulations—so too does the State's investigation impinge the free publication and creation of protected speech on Investigated Platforms' websites. For example, the Supreme Court has repeatedly held the First Amendment protects the editorial discretion of newspapers. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 570 (1995) ("[T]he presentation of an edited compilation of speech generated by other persons is a staple of most newspapers' opinion pages, which, of course, fall squarely within the core of First Amendment security[.]"); *see also Bursey v. United States*, 466 F. 2d 1059 (9th Cir. 1972) (holding that the First Amendment shielded the Black Panther Party's newspaper from grand jury questions about its editorial policies because "these decisions reflect editorial judgment. So also do the decisions about what should be published initially, how much space should be allocated to the subject, or the placement of a story on the front page or in the obituary section").

**IV.   Conclusion**

While Rumble remains deeply saddened by the October 7th attack on Israeli civilians and the ongoing Israeli-Hamas war, it is also acutely aware of Attorney General James's longstanding intention to hold social media platforms and other websites "accountable" for so-called "hateful content"—an undefined and inherently subjective category of protected speech. Because the Attorney General's rhetoric, combined with her enforcement powers, chills protected speech, a federal district court has enjoined the law. But the investigation letters attempt to circumvent the district court's injunction—demanding information from the Investigated Platforms about their policies, processes, and actions related to "hateful" and "violent" content. The fact that the investigation letters do not cite the Online Hate Speech Law (or any legal authority, for that matter) is no defense. They are blatant attempts to both evade the injunction and to act as an end-run around the districts court's stay of the proceedings pending appeal, attempting to force discovery outside the litigation.

To protect the First Amendment rights of Rumble, other online platforms, and content creators and users around the world, the State must rescind the investigation letters. Rumble respectfully declines to respond further at this time. If you do not rescind your letters, then we will be required to file a motion with the district court to enforce the terms of the preliminary injunction and

New York Attorney General Letitia James
October 18, 2023
Page 10 of 10

stay of proceedings. Please let us know by **October 20, 2023**, if you agree to rescind the letters.

     Please do not hesitate to contact Jay Diaz at jay.diaz@thefire.org or (215) 717-3473 ext. 218 if you have any questions.

          Sincerely,

          Jay Diaz, Senior Attorney
          Daniel Ortner, Attorney
          FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
          510 Walnut Street, Suite 1250
          Philadelphia, Pennsylvania 19106

cc: Sarah Coco, Barry Covert

# Exhibit D



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF ECONOMIC JUSTICE
BUREAU OF INTERNET & TECHNOLOGY

**BY EMAIL**

October 19, 2023

Jay Diaz, Esq.
Daniel Ortner, Esq.
Foundation for Individual Rights and Expression
510 Walnut Street, Suite 1250
Philadelphia, PA 19106

Re: The New York State Attorney General's October 12, 2023 Letter to Rumble Inc.

Dear Messrs. Diaz and Ortner,

I write in response to your October 18, 2023 letter. While we wholeheartedly disagree with your analysis and the contentions in your letter, in view of your statement that Rumble has "already provided its content-moderation policies" to the Attorney General's Office, and in the interest of avoiding any unnecessary dispute, this Office hereby withdraws the voluntary requests set forth in its October 12, 2023 letter to Rumble.

Sincerely,

Jordan Adler
Senior Enforcement Counsel
Bureau of Internet and Technology