STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF STATE COUNSEL
LITIGATION BUREAU

Writer's Direct Dial: (212) 416-8029

October 30, 2023

**BY ECF**
Hon. Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, New York 10007
ALCarterNYSDChambers@nysd.uscourts.gov

RE:   *Volokh v. James*, SDNY No. 22 Civ. 10195 (ALC)

Dear Judge Carter:

This Office represents Defendant Letitia James, sued in her official capacity as Attorney General of the State of New York ("A.G. James" or "Attorney General"). Pursuant to Section 2.A of Your Honor's Individual Practices, this letter is respectfully submitted in response and opposition to Plaintiffs' October 25, 2023 letter (ECF No. 38, "Letter") requesting a pre-motion conference for leave to file a motion to enforce this Court's February 14, 2023 Order granting plaintiffs' motion for preliminary injunction (ECF No. 29) ("the PI Order").

Plaintiffs claim the Attorney General's voluntary requests for information sent to several social media companies on October 12 in response to the dramatic escalation of threats of violence against Jewish and Muslim New Yorkers somehow run afoul of the PI Order.[1] But voluntary requests for information are plainly within the general acts and duties of the Attorney General, and in no way constitute the enforcement of N.Y. Gen. Bus. Law § 394-ccc ("Section 394-ccc") specifically prohibited by the PI Order. Plaintiffs' request is without merit and leave to file a motion to enforce should be denied.

**The Letters Sent by A.G. James Were Voluntary Requests:** On October 12, 2023, the Attorney General sent letters to six social media companies, including non-parties Google, Meta, X (formerly Twitter), TikTok, Reddit, as well as Rumble, with a list of questions regarding how each is addressing calls for violence against Jewish and Muslim people and institutions on its platform in the light of recent rapid escalation in hate-related crime and violence following the events in the Middle East. Compliance with these requests was entirely voluntary with no consequence for declining to respond. The letters were not sent pursuant to any power set forth under Section 394-ccc nor for the purpose of compelling compliance with it. Nowhere in the October 12th letters (ECF 38-1, Ex. A) or in the October 13th press release (*id.*, Ex. B) is Section

---

[1] The letter sent to Plaintiff Rumble Canada Inc. ("Rumble") has already been rescinded.  (*See* Plaintiffs' Exhibit D.)

394-ccc even mentioned, and there is no reference whatsoever to any of the statute's coercive provisions (*i.e.* monetary fines or compelled disclosure of information).

The Attorney General's voluntary requests for information from social media platforms are well within her general duties and authority. The government is entitled to "advocate and defend its own policies." *Board of Regents v. Southworth*, 529 U.S. 217, 229 (2000); *see Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F.4th 700, 715 (2d Cir. 2022). Such advocacy is clearly permissible where, as here, the Attorney General's communication contained no reference to "adverse consequences," was not understood by the recipients "as a threat," and was not followed up by further demands for action. *Kennedy v. Warren*, 66 F.4th 1199, 1208-12 (9th Cir. 2023). To the contrary, when Rumble objected to the Attorney General's requests to Rumble, they were promptly withdrawn.

**Scope of the Court's Injunction:** Plaintiffs' application rests on a misreading of the scope of the PI Order. As this Court described it, Section 394-ccc "has two main requirements: (1) a mechanism for social media users to file complaints about instances of "hateful conduct" and (2) disclosure of the social media network's policy for how it will respond to any such complaints." *Id.* at 2. In addition, "[t]he law also empowers the Attorney General to investigate violations of the law and provides for civil penalties for social media networks which "knowingly fail[ ] to comply" with the requirements." *Id.* at *5.[2]

Enforcement of Section 394-ccc therefore manifests as an exercise of A.G. James' *coercive* investigatory or subpoena powers for the purpose of determining a violation of this particular statutory section, or in the issuance of a civil penalty for failure to knowingly comply with this section. By its own terms, the scope of the PI Order is limited to enforcement of only Section 394-ccc.[3] It does not extend to any other power, authority, or conduct by A.G. James.

Here, there has simply been no enforcement of Section 394-ccc. No entity or person has been investigated or subpoenaed in connection with determining compliance with Section 394-ccc, and no entity or person has been fined in connection there within. The statute has not been given force or effect, and no compliance of any sort has been compelled or coerced.

**Accepting Plaintiffs' Interpretation of the Scope of the PI Order Renders It Ambiguous and Unenforceable:** While Plaintiffs allege no enforcement of Section 394-ccc and there is no evidence of any such enforcement, they broadly construe the PI Order as enjoining A.G.

---

[2] Specifically, Section 394-ccc(5) provides that:

> Any social media platform that knowingly fails to comply with the requirements of this section shall be assessed a civil penalty for such violation by the attorney general not to exceed one thousand dollars. Each day such offense shall continue shall constitute a separate additional violation. In determination of any such violation, the attorney general shall be authorized to take proof and make a determination of the relevant facts and to issue subpoenas in accordance with the civil practice law and rules.

[3] It is axiomatic that "'[t]o comply with the specificity and clarity requirements' of Rule 65(d) 'an injunction must be specific enough to apprise those within its scope of the conduct that is being proscribed.'" *Capstone Logistics Holdings, Inc. v. Navarrete*, 838 Fed. Appx. 588, 590 (2d Cir. 2020) (summary order) (quoting *S.C. Johnson & Son, Inc. v. Clorox Co.,* 241 F.3d 232, 240-1 (2d Cir. 2001)).

James from inquiring about "websites' policies, practices, methods, and actions regarding the subject matter of the Online Hate Speech Law." (Letter at 3.) Plaintiffs contend that this prohibition extends not just to compliance with the two prongs of Section 394-ccc, but to *any* inquiry that would touch upon "hateful conduct" as defined under the statute, including "calls for violence." (*See, e.g., id.* at 3). Indeed, Plaintiffs' reading is so broad that it amounts to a prohibition against any hypothetical "chilling effects" on any speech that may or may not have resulted from the letters and press release. (Letter at *3). A.G. James's letters and press release do not require removal of protected speech, and Plaintiff's argument is far beyond the scope of the PI Order.

This misreading of the PI Order would extend far beyond enforcement of Section 394-ccc, and preclude A.G. James from merely making *voluntary inquiries* into the business practices of social media companies concerning whatever Plaintiffs feel may fall within the "subject matter" of the statute, including criminal incitement of violence and specific threats. Plaintiffs are wrong. If the Court were to accept Plaintiffs' broad reading of its injunction as effectively blanket immunity for all social media companies from even voluntary inquiries into "the subject matter" of "hateful conduct," it would render the injunction improperly ambiguous, and thus, unenforceable by an application for contempt of a clear and unambiguous order.[4] The PI Order here enjoins enforcement of Section 394-ccc, a statute that encompasses coercive powers to compel disclosure of information and to impose monetary fines. Plaintiffs' broad interpretation would transform a preliminary injunction about Section 394-ccc into a sweeping ban on the Attorney General's day-to-day work and responsibilities that have nothing to do with the statute at issue. Extending the PI Order to the point of precluding *non-coercive* voluntary requests for information even tangentially related to the subject of the statute, as Plaintiffs argue, certainly creates uncertainty as to the scope of the PI Order.[5]

Finally, given the withdrawal of the request to Rumble, Plaintiffs now purport to bring their present application to "enforce" this Court's order *on behalf of non-parties*[6] who received similar requests, and to seek to strip A.G. James of well-established authority far beyond any rational reading of the PI Order. This is impermissible.

Accordingly, A.G. James respectfully requests that the Court exercise its discretion in the interest of judicial economy to preserve the limited resources of the Court and of the State of New

---

[4] "A clear and unambiguous order is one that leaves no uncertainty in the minds of those to whom it is addressed, who must be able to ascertain from the four corners of the order precisely what acts are forbidden. Thus, a contempt order is inappropriate if there is a fair ground of doubt as to the wrongfulness of the alleged contemnor's conduct. Ambiguities in the order's language and persisting questions about legal limits on the court's power can each defeat a contempt motion." *Next Invs., LLC v. Bank of China*, 12 F.4th 119, 131 (2d Cir. 2021) (internal quotations and citations omitted).

[5] In addition, Plaintiffs have argued—and this Court has held—that "hateful conduct" contains "indefinite[]" key terms. *Volokh* at *9-10. Reading this injunction to extend to any inquiry by A.G. James into "hateful conduct" would therefore not only be wrong and vastly beyond the scope of the PI Order, but would also render the injunction similarly indefinite and thus unenforceable on the Court's own determination.

[6] Plaintiffs make no representation about whether any non-party takes the position that the PI Order has been violated or even implicated at all, even as the relief they seek includes obtaining proprietary materials from those same non-parties.

Hon. Andrew L. Carter, Jr., U.S.D.J. Page 4 of 4
October 30, 2023

York and reject Plaintiffs' baseless request in all respects.

    Thank you for Your Honor's consideration of this matter.

Respectfully submitted,

 /s/ *Seth J. Farber*
Seth J. Farber
Special Litigation Counsel

cc:     All Counsel of Record (By ECF)