

**FIRE**
Foundation for Individual
Rights and Expression

November 1, 2023

<u>SENT BY ECF</u>
Hon. Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY, 10007
ALCarterNYSDChambers@nysd.uscourts.gov

*Re:*   *Volokh v. James*, 1:22-cv-10195: Plaintiffs' Reply Letter Supporting
        Request for Pre-Motion Conference to Enforce Preliminary Injunction.

Dear Judge Carter:

Plaintiffs submit this reply in support of their request for a pre-motion conference concerning enforcement of this Court's preliminary injunction of New York's Online Hate Speech Law, General Business Law §§ 394-ccc (the Online Hate Speech law). Pls.' Ltr. Br., ECF No. 38.

On October 12, through a set of investigation letters, New York Attorney General Letitia James demanded information from Plaintiff Rumble Canada Inc. (Rumble) and five other social-media platforms (the Investigated Platforms), including on "how the compan[ies are] identifying, removing, and blocking the re-uploading" of certain content in the wake of the Hamas attacks in Israel. Pls.' Ltr. Br. Ex. A at 1. On October 30, the State opposed Plaintiffs' request to even hold a pre-motion conference, claiming that its investigation letters do not violate the preliminary injunction because they are (1) voluntary requests; and (2) do not fall within the scope of the injunction (that they claim is ambiguous). State Resp. Br., ECF No. 39. As explained below, these arguments are without merit and the Court should halt the Attorney General's investigation because it violates the terms of this Court's preliminary injunction, Mem. and Op., ECF No. 29, and chills the protected speech of Plaintiffs, other online platforms, and their users.

**I.     The Preliminary Injunction Bans Investigating Platform Policies, Mechanisms, and Practices Regarding "Hateful" Content.**

The Attorney General's investigation letters violate the preliminary injunction. Her investigation letters contain invasive inquiries into the policies, methods, practices, and actions of the Investigated Platforms regarding "hateful" content that

Hon. Andrew L. Carter, Jr.
November 1, 2023
Page 2 of 4

"may incite violence" against Jewish or Muslim people. But this Court enjoined Attorney General James's investigative authority related to the website's policies and mechanisms for reporting and responding to "hateful" content that may "vilify, humiliate, or *incite violence* against a group" of a protected class status. N.Y. Gen. Bus. Law § 394-ccc(1)(a) (emphasis added). Regardless of whether they explicitly reference the Online Hate Speech Law, the Attorney General's investigation letters look to "take proof" and "make a determination of relevant facts" of the exact information needed to enforce the enjoined law. *Id.* § 394-ccc(5). The letters therefore improperly give the Online Hate Speech Law "force [and] effect." State Resp. Br. at 2.

The State assumes that this Court's injunction prohibits only "compelled" or "coercive" investigations that expressly invoke the law. State Resp. Br. at 2. It is mistaken. First, neither the statute nor the injunction distinguishes a "voluntary" investigation from a "coercive" investigation. To the contrary, the statute provides authority to "take proof . . . *and* issue subpoenas," implying that it covers both voluntary and coercive investigations. N.Y. Gen. Bus. Law § 394-ccc(5) (emphasis added).

Second, labeling the investigation letters "voluntary requests," State Br. at 1, does not reduce their coercive force. The Attorney General is New York's top law enforcement officer, and her letters and press release demand disclosure of moderation policies, responses to various interrogatories, and the removal of "hateful" content—lest the Attorney General take additional measures to "hold social media companies accountable." Pls.' Ltr. Br. Ex. A at 1–2, B at 2. In fact, the Attorney General touts the investigation letters among her efforts to "hold social media companies accountable and limit dangerous material." Pl.'s Ltr. Br. Ex. B at 2. The State should not be allowed to circumvent the injunction by simply avoiding reference to the Online Hate Speech Law (or any authority at all) while conducting an investigation that falls directly under its scope.

Third, this Court enjoined the Online Hate Speech Law because the *possibility* of future investigations is *inherently* coercive, explicitly observing that enforcement of the statute would likely have "a profound chilling effect" on the creation, posting, and publishing of a substantial amount of protected speech. Mem. and Op. at 18 ("[T]he state's targeting and singling out of this type of speech for special measures certainly could make social media users wary about the types of speech they feel free to engage in without facing consequences from the state.").

## II.   This Court's Injunction Is Clear and Any Enforcement of the Statute Puts Plaintiffs' First Amendment Rights at Substantial Risk.

Contrary to the State's claims, *see* State Resp. Br. at 2–3, the scope of the injunction is unambiguous: Enforcement of the Online Hate Speech Law is completely

Hon. Andrew L. Carter, Jr.
November 1, 2023
Page 3 of 4

enjoined. Mem. and Op. at 20. If the scope of the injunction were unclear, the State should have sought "clarification . . . as to what the [injunction] meant." *Grasso v. Norton*, 520 F.2d 27, 37–38 (2d Cir. 1975). Instead, the State chose to send investigation letters directly to the Investigated Platforms (including a Plaintiff in this case) about their policies, methods, practices, and actions regarding "hateful" content.

Although the Attorney General's Office withdrew the letter to Rumble in response to Rumble's objection, it still claims the authority to investigate the "hateful" content policies and practices of Plaintiffs, other Investigated Platforms, and other covered websites. The State claims it withdrew the Rumble investigation letter only because Rumble had "already provided its content-moderation policies." Pls.' Ltr. Br. Ex. D. But it continues to "wholeheartedly disagree with [Rumble's] analysis and the contentions in [Rumble's] letter" and refuses to rescind the letters to the other Investigated Platforms. *Id.* Rescinding the letter to Rumble does not quell the ongoing or potential violations of the injunction—whether taken against Plaintiffs or other similar entities.

Furthermore, Plaintiffs can seek to enforce this Court's injunction to protect others from the chilling effect of investigations directly within the scope of the enjoined Online Hate Speech Law. The letters and press release represent the same veiled threats to social media companies previously made by Attorney General James. She again intends to pressure the Investigated Platforms and other covered websites to "limit dangerous material" and punish its creators. Pls.' Ltr. Br. Ex. B at 2. The Attorney General's investigation letters and press release, like the Online Hate Speech Law, use vague, overbroad, undefined, and subjective terms and phrases—"calls for violence," "dangerous," "hateful," "horrific," and "violent"—to describe disfavored content. Pl.'s Ltr. Br. Ex. A at 1, Ex. B at 1–2. The letters, like the statute, will therefore force *all* platforms and users to "steer far wider" in their content removal to avoid the potential legal threat. *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972). This broad-based chilling effect is precisely what the Court's preliminary injunction is intended to prevent. Mem. and Op. at 18.

Plaintiffs seek a narrow limitation on investigations targeted at the policies, methods, mechanisms, practices, and actions regulated by the Online Hate Speech Law and enjoined by this Court's injunction. This would not be "a sweeping ban on the Attorney General's day-to-day work and responsibilities that have nothing to do with the statute at issue," State Resp. Br. at 3. Plaintiffs look forward to discussing these issues with the Court at a pre-motion conference.

Respectfully submitted,

/s Daniel M. Ortner

Hon. Andrew L. Carter, Jr.
November 1, 2023
Page 4 of 4

DANIEL M. ORTNER*
(California State Bar No. 329866)*
JAMES M. DIAZ
(VERMONT STATE BAR NO. 5014)*
FOUNDATION FOR INDIVIDUAL RIGHTS
   AND EXPRESSION
510 Walnut St., Suite 1250
Philadelphia, PA 19106
Telephone: (215) 717-3473
daniel.ortner@thefire.org
jay.diaz@thefire.org

BARRY N. COVERT
(New York Bar No. 27118)
LIPTSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Ave., Suite 120
Buffalo, NY 14202
Tel: (716) 849-1333 x 365
bcovert@lglaw.com

*Attorneys for Plaintiffs*

*Admitted Pro Hac Vice*

cc:    All Counsel of Record (By ECF)