# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

EUGENE VOLOKH, RUMBLE CANADA
INC., and LOCALS TECHNOLOGY INC.,

     *Plaintiffs,*

  v.

LETITIA JAMES, in her official capacity as
Attorney General of New York,

     *Defendant.*

Civil Action No.: 1:22-cv-10195-ALC

Date: January 8, 2024
Time: 8:30 AM
Place: Courtroom 1306
Judge: The Honorable Andrew L. Carter

---

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION TO ENFORCE PRELIMINARY INJUNCTION

---

DANIEL M. ORTNER*
(Cal. Bar No. 329866)
JAMES M. DIAZ*
(Vt. Bar No. 5014)
FOUNDATION FOR INDIVIDUAL RIGHTS AND
  EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Telephone: (215) 717-3473
daniel.ortner@thefire.org
jay.diaz@thefire.org
* Admitted *Pro Hac Vice*

BARRY N. COVERT
(N.Y. Bar No. 271118)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Ave Suite 120
Buffalo, NY 14202
Tel: 716 849 1333 x 365
bcovert@lglaw.com

*Counsel for Plaintiffs Eugene Volokh, Rumble Canada Inc., and Locals Technology Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................. iii

INTRODUCTION................................................................................................................1

      A.    New York Adopts the Online Hate Speech Law to Pressure
           Websites to Remove Protected Speech That the State Deems
           "Hateful."..........................................................................................................2

      B.    This Court Preliminarily Enjoined Enforcement of the Online Hate
           Speech Law, Including Its Investigative Provision. .................................................3

      C.    The Attorney General Violates the Preliminary Injunction by
           Sending Investigation Letters to Plaintiff Rumble and Other Social
           Media Networks. ................................................................................................4

STANDARD OF REVIEW....................................................................................................5

ARGUMENT .....................................................................................................................7

      I.     The Attorney General's Investigation Letters Violate the Letter and
           Spirit of this Court's Preliminary Injunction Order...............................................7

           A.    The Attorney General is trying to investigate the exact
                   information necessary to enforce the enjoined Online Hate
                   Speech Law.........................................................................................8

           B.    The Attorney General's investigation letters and
                   contemporaneous public threats of enforcement violate the
                   express purpose of this Court's injunction. ...............................................10

      II.    Plaintiffs Have Standing to Enforce the Terms of this Court's
           Injunction...........................................................................................................13

CONCLUSION .................................................................................................................15

CERTIFICATE OF SERVICE..............................................................................................16

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Campbell v. Greisberger*,
   80 F.3d 703 (2d Cir. 1996) ...................................................................................13

*Class v. Norton*,
   507 F.2d 1058 (2d Cir. 1974) .................................................................................6

*Elrod v. Burns*,
   427 U.S. 347 (1976) ...............................................................................................11

*Espinosa ex rel. Espinosa v. Shah*,
   2014 WL 6865664 (S.D.N.Y. Dec. 5, 2014) ..........................................................7

*Farrell v. Burke*,
   449 F.3d 470 (2d Cir. 2006) .................................................................................14

*Flaherty v. Filardi*,
   No. 03-CV-2167-LTS-HBP, 2009 WL 3762305 (S.D.N.Y. Nov. 10, 2009) ...........12

*Grasso v. Norton*,
   520 F.2d 27 (2d Cir. 1975) .....................................................................................9

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972) ...............................................................................................11

*Hobbs v. Cnty. of Westchester*,
   397 F.3d 133 (2d Cir. 2005) .................................................................................14

*In re Gushlak*,
   No. 11-mc-0218, 2012 WL 2564523  (E.D.N.Y. Jan. 30, 2012) ..............................6

*In re Tronox Inc.*,
   855 F.3d 84 (2d Cir. 2017) ......................................................................................6

*Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*,
   239 F.3d 172 (2d Cir. 2001) ...................................................................................6

*Mhany Mgmt., Inc. v. Cty. Of Nassau*,
   819 F.3d 581 (2d Cir. 2016) .................................................................................13

*Morisseau v. DLA Piper*,
   707 F. Supp. 2d 460 (S.D.N.Y. 2010) ....................................................................6

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
    704 F. Supp. 2d 305 (S.D.N.Y. 2010) ...............................................................6

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*,
    369 F.3d 645 (2d Cir. 2004) ...........................................................................12

*Pena v. New York State Div. for Youth*,
    708 F.2d 877 (2d Cir.1983) ..........................................................................6, 7

*United States v. Am. Express Co.*,
    2015 WL 9049915 (E.D.N.Y. Dec. 15, 2015) ...................................................7

*United States v. New York City Transit Auth.*,
    97 F.3d 672 (2d Cir. 1996) ...........................................................................13

*United States v. Visa U.S.A., Inc.*,
    2007 WL 1741885 (S.D.N.Y. June 15, 2007) ................................................6, 7

*Vassell v. Reliance Sec. Grp., PLC*,
    328 F. Supp. 2d 454 (S.D.N.Y. 2004) .............................................................7

*Walker v. City of Birmingham*,
    388 U.S. 307 (1967) ......................................................................................6

*Yassky v. Kings Cnty. Democratic Cnty. Comm.*,
    259 F. Supp. 2d 210 (E.D.N.Y. 2003) ...........................................................13

**Statutes**

N.Y. Gen. Bus. Law § 394-ccc ...............................................................*passim*

## <u>INTRODUCTION</u>

The State of New York is violating this Court's February 14, 2023, injunction against en-forcement of N.Y. Gen. Bus. Law § 394-ccc, New York's Online Hate Speech Law. Specifically, Defendant New York Attorney General Letitia James is investigating Plaintiff Rumble Canada Inc. (Rumble) and five other social media networks (collectively, the Investigated Networks) with regard to their policies and practices related to "hateful" internet content—the exact investigation authorized by the enjoined statute. This Court must stop these and any similar future investigations to protect the sanctity of its ruling and Plaintiffs' free speech rights, and those of innumerable other websites and their users.

But for this Court's injunction, the Online Hate Speech Law would force a multitude of websites to create and publish a policy for when the site will remove protected speech the State defines as "hateful." It would also require them to create a mechanism for users to complain about this "hateful" speech, and to respond to user complaints. In addition, the law threatens websites with possible investigation, subpoena, and sanction. Through these mechanisms, the law chills the speech of websites and their users and pressures websites to remove "hateful" content if they wish to avoid the State's watchful and intrusive eye. That led this Court to enjoin the law's enforcement in its entirety—including its grant of investigative authority to the New York Attorney General—as unconstitutionally overbroad and vague on its face. Mem. and Op., ECF No. 29 at 20.

In the wake of the October 7 Hamas attacks in Israel, Attorney General James sent the Investigated Networks investigative letters (and publicized them in a press release). Her letters demand answers to interrogatories and the production of documents related to the networks' policies and practices on "hateful" speech—the exact subject of the enjoined Online Hate Speech Law. The press release used rhetoric reminiscent of the Attorney General's statements promoting

passage of the Online Hate Speech Law and called for the Investigated Networks to remove and chill users' protected expression. *Compare* Verified Compl. ¶¶ 46–54 *with* Ortner Decl. Ex. C.

The State's actions inhibit the Investigated Networks' speech and editorial discretion and violate the plain language and meaning of this Court's preliminary injunction order. This Court cannot permit the Attorney General to conduct investigations—with their accompanying pressure—to achieve the ends stated, authorized, and intended by the enjoined Online Hate Speech Law. It must therefore issue an order consistent with its preliminary injunction to stop the Attorney General from conducting this type of investigative or enforcement activity.

## **FACTUAL BACKGROUND**

**A.    New York Adopts the Online Hate Speech Law to Pressure Websites to Remove Protected Speech That the State Deems "Hateful."**

New York's Online Hate Speech Law requires a vast array of websites[1] to develop and publish a "policy" and "reporting mechanism" for users to report "hateful" content. Mem. and Op., ECF No. 29 at 4. It also requires websites to provide direct responses to any person reporting "hateful" content. *See* N.Y. Gen. Bus. Law § 394-ccc(2)–(3). Adopted last year, the law defines "hateful" content as speech that may "vilify, humiliate, or incite violence against" ten protected classes. N.Y. Gen. Bus. Law § 394-ccc(1)(a). The law also empowers the Attorney General with investigative authority to "take proof and make a determination of the relevant facts" as necessary to investigate violations. *Id*. § 394-ccc(5). Mem. and Op. at 5. The Attorney General may assess daily fines of up to $1,000 a day for violations. *Id*. § 394-ccc(5).

---

[1] The Online Hate Speech Law covers all "social media network[s]," defined broadly as "service providers, which, for profit-making purposes, operate internet platforms that are designed to enable users to share any content with other users or to make such content available to the public" and conduct business in New York. N.Y. Gen. Bus. Law § 394-ccc(1)(b), (2).

The legislative sponsors and executive enforcers of the Online Hate Speech Law emphasized that it would empower the State to investigate social media networks and demand that networks take down speech that New York deemed "hateful." For example, the President Pro Tempore of the New York Senate argued that the law would allow state officials to "confront[] the spread of misinformation and hateful ideology by finally demanding social media platforms do more." Ortner Decl. Ex. F, Transcript of Regular Session of New York State Senate at 5367, June 2, 2022, 1:18 PM. When signing the bill, New York Governor Kathy Hochul similarly emphasized its reach: "[W]e're now requiring social media networks to monitor and report hateful conduct on their platforms." *See* Verified Compl. ¶ 44. Likewise, Attorney General James, in hailing the law's passage, noted that "social media platforms provide an unchecked vehicle for [] dangerous and corrosive ideas to spread" and claimed the law would allow her office to "expand our work . . . to address this growing threat" from "dangerous and hateful platforms." *Id.* ¶ 45.

**B.     This Court Preliminarily Enjoined Enforcement of the Online Hate Speech Law, Including Its Investigative Provision.**

In February 2023, in response to the challenge of Plaintiffs Professor Eugene Volokh, Rumble, and Locals Inc. to the Online Hate Speech Law, this Court preliminarily enjoined it, finding it likely violated the First Amendment. Mem. and Op. at 1–2, 16, 19. The Court explained that the Online Hate Speech Law targets protected speech across the internet and compels a vast number of websites to speak about hate speech. Mem. and Op. at 1, 17–19. The law regulated websites as "publishers and curators of speech," infringing their First Amendment-protected editorial judgment. Mem. and Op.at 17. The Court also explained that law's prohibition of "hateful" speech went "far beyond" a prohibition on unlawful conduct such as imminent incitement of violence. Mem. and Op. at 15 & n. 3. Instead, the law "requires a social media network to endorse the state's message about 'hateful conduct,'" *id.* at 9, and "could have a

profound chilling effect on social media users and their protected freedom of expression." *Id.* at

18. The law "both compels social media networks to speak about the contours of hate speech and

chills the constitutionally protected speech of social media users, without articulating a compelling

governmental interest or ensuring that the law is narrowly tailored to that goal." *Id.* at 1. And the

law's constitutional defects were "exacerbated by the indefiniteness of some of the Hateful

Conduct Law's key terms." *Id.* at 18.  The State appealed this ruling, and proceedings in this Court

are stayed, but the injunction remains in effect. *See* State Br. Supp. Mot. Stay, ECF No. 36 at 2

("A.G. James does not ask this Court to stay the preliminary injunction pending appeal.").

**C.    The Attorney General Violates the Preliminary Injunction by Sending Investigation Letters to Plaintiff Rumble and Other Social Media Networks.**

On October 12, in response to the reignited Israeli-Palestinian Conflict, the Attorney

General sent investigation letters to the six Investigated Networks, including Plaintiff Rumble.[2]

The letters are titled "Removing Calls for Violence on the [Investigated Networks]." Ortner Decl.,

Ex. A at 1; Ex. B at 1. They contain intrusive interrogatories and demands for documents regarding

the Investigated Networks' policies, processes, methods, and actions with respect to "hateful

content," Ex. C. at 1. For example, the interrogatories demand that each platform detail (1) "how

the company is identifying, removing, and blocking the re-uploading of" "hateful" content;

(2) how they respond to user reports of "hateful" content; and (3) how they are "disciplining,

suspending, and/or banning users for posting" this "hateful" content. Ortner Decl., Ex. A at 1–2;

Ex. B at 1–2; Ex. C. at 1.

The Attorney General's October 13 press release announcing the investigation letters went

further. It accused "social media" of being "widely used by bad actors to spread horrific material,

---

[2] The Investigated Networks are: Meta (owner of Facebook), Google, X (formerly Twitter), TikTok, Rumble, and Reddit.

disseminate threats, and encourage violence." Ortner Decl., Ex. C. at 1. It demanded that the Investigated Networks explain "the steps they are taking to stop the spread of hateful content encouraging violence against Jewish and Muslim people." *Id.* And it confessed that the letters are part and parcel of the Attorney General's repeated "action[s] to hold social media companies accountable and limit dangerous material from spreading online." *Id.* at 2.

On October 18, Rumble objected in writing, demanding that Attorney General James rescind the investigation letters. Rumble's letter argued that the investigation violated the terms of the preliminary injunction, constituted an improper bypass of the discovery stay Defendants sought in this case, and infringed Rumble's First Amendment rights. Ortner Decl., Ex. D. Like the Online Hate Speech Law's vague terminology, the Attorney General's references to "calls for violence," "other materials that may incite violence," and "hateful" or "dangerous" content apply to a substantial amount of protected speech. Rumble noted that failure to rescind the letters would force Rumble to seek to enforce the preliminary injunction. Ortner Decl., Ex D at 1.

On October 19, 2023, the Attorney General's Office responded. Although the Office "wholeheartedly disagree[d]" with Rumble's analysis, it withdrew the investigation letter to Rumble because "Rumble has already provided its content-moderation policies." Ortner Decl., Ex. E. However, the Office did not rescind its letters to the other Investigated Networks.

## **STANDARD OF REVIEW**

Granting a motion to enforce requires only "a preponderance of the evidence" that a court order has been violated. *United States v. Visa U.S.A., Inc.*, No. 98 Civ. 7076 (BSJ), 2007 WL 1741885, at *4 (S.D.N.Y. June 15, 2007). In fact, the moving party need only ask the court to exercise its "ability to impose a penalty or sanction . . . for noncompliance with its prior Orders, with or without a finding of contempt or bad faith." *Espinosa ex rel. Espinosa v. Shah*, 2014 WL 6865664, at *11 (S.D.N.Y. Dec. 5, 2014).

An injunction "must be obeyed until modified or dissolved." *Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 239 F.3d 172, 176 (2d Cir. 2001); *see Walker v. City of Birmingham*, 388 U.S. 307, 314 (1967) (holding that court orders must receive "[]obedience" and "respect[]" and upholding contempt conviction for violation of a  preliminary injunction order); *Class v. Norton*, 507 F.2d 1058, 1060 (2d Cir. 1974) ( "One is bound to obey an order issued by a court with jurisdiction over the person and subject matter unless and until that order is reversed by appropriate judicial proceedings.").

When a party does not obey an injunction, the court has broad equitable powers to remedy the violation and can take "any reasonable action to secure compliance with its orders." *In re Tronox Inc.*, 855 F.3d 84, 112 (2d Cir. 2017); *see also New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 327 (S.D.N.Y. 2010) (granting a motion to enforce a preliminary injunction and noting the court's "complete power over its interlocutory orders").

"A motion to enforce is an appropriate procedural vehicle for parties to seek compliance with a court order." *United States v. Visa U.S.A., Inc.*, 2007 WL 1741885, at *3 (S.D.N.Y. June 15, 2007) (granting a motion to enforce a preliminary injunction because the court would "not countenance a continuing violation of its order") (citing *Pena v. New York State Div. for Youth*, 708 F.2d 877 (2d Cir.1983)).  Thus, courts grant motions to enforce regardless of whether there is a finding that a party is in contempt. *See generally United States v. Am. Express Co.*, 10-CV-4496, 2015 WL 9049915, at *1–3 (E.D.N.Y. Dec. 15, 2015) (granting a motion to enforce without holding a party in contempt); *Vassell v. Reliance Sec. Grp., PLC*, 328 F. Supp. 2d 454, 462 (S.D.N.Y. 2004) (same); *see also Pena*, 708 F.2d at 877 (affirming grant of motion to enforce). This is true even when the preliminary injunction order is on appeal. *See Morisseau v. DLA Piper*, 707 F. Supp. 2d 460, 461–62 (S.D.N.Y. 2010) ("[T]here is no inconsistency between this Court

enforcing an order that remains in full force and effect notwithstanding [Defendants'] appeal from that order."); *accord In re Gushlak*, No. 11-MC-0218, 2012 WL 2564523 at *4 (E.D.N.Y. Jan. 30, 2012) (collecting cases).

## ARGUMENT

The investigation letters violate the terms of this Court's preliminary injunction, which categorically enjoined all enforcement of the Online Hate Speech Law without exception—including necessarily its grant of investigative authority to the New York Attorney General. The order thus prevents the Attorney General from investigating social media networks' policies and practices related to "hateful" speech that may "vilify, humiliate, or incite violence against" Jews, Muslims, or any other protected class—the precise subject of the Online Hate Speech Law. The Court should therefore enforce its preliminary injunction and order the Attorney General to withdraw her investigation letters, cease similar investigations, and refrain from future investigations or other enforcement actions that fall directly under the scope of the Online Hate Speech Law. This relief is necessary to prevent the State from threatening to investigate any network at any time, chilling the protected speech of websites and their users, including Plaintiffs.

I.    **The Attorney General's Investigation Letters Violate the Letter and Spirit of this Court's Preliminary Injunction Order.**

The Attorney General's investigation letters violate the terms of this Court's order by demanding social media networks provide the same information targeted by the Online Hate Speech Law. Given the Attorney General's role as New York's chief law enforcement officer, these letters have an inherently coercive and chilling impact on protected internet speech. The letters therefore violate both the letter and the spirit of the preliminary injunction order.

**A.      The Attorney General is trying to investigate the exact information necessary to enforce the enjoined Online Hate Speech Law.**

The Attorney General's investigation letters violate the preliminary injunction because they seek the same information required to enforce the Online Hate Speech Law from entities that that law regulates. The statute defines hate speech, recharacterized by the State as "hateful conduct," to be internet content that can be said to "vilify, humiliate, or incite violence against a group" of a protected-class status. N.Y. Gen. Bus. Law  § 394-ccc(1)(a). Using this definition, the statute requires "social media networks" to: (1) develop and publish a "clear and concise policy" for addressing and removing "hateful" speech, *id*. § 394-ccc(1), (3); (2) develop and publish a "clear and easily accessible mechanism" for users to complain about this "hateful" speech; and (3) "provide a direct response" to complaints, *see id*. § 394-ccc(2), (4). The law also authorizes the Attorney General to investigate networks' compliance and to penalize non-compliance. *Id*. § 394-ccc(5).  Although the scope of this Court's order is unambiguous that enforcement of the Online Hate Speech Law is completely enjoined, including investigations related to networks' policies, reporting mechanisms, and responses to "hateful" content, the Attorney General's letters investigate those exact policies, practices, methods, and actions. Mem. and Op. at 20.

For example, the Attorney General demands that the Investigated Networks "describe in detail" their policies, practices, methods, and actions related to third-party-created content on their sites that "may incite violence against Jewish and Muslim people." Ortner Decl., Ex. A at 1; Ex. B. at 1. Using similar terms, the investigation letters repeatedly seek to "take proof" in order to "make a determination of relevant facts" about speech that "may incite violence" against groups based on their protected class statuses (i.e., religion, ethnicity, and national origin)—the same subject matter of the Online Hate Speech Law. N.Y. Gen. Bus. Law  § 394-ccc(5). *Cf. id*. § 394-ccc(1).

The investigation letters go further, too, demanding the exact information needed to enforce the enjoined law. The letters, among other things, ask the Investigated Networks to describe and provide copies of outward- and company-facing policies for: (1) determining whether "a call[] for violence" should be removed; (2) reviewing user complaints; (3) "removing calls for violence"; (4) removing additional copies of removed content and preventing its "re-posting"; and (5) disciplining, suspending, or banning users who post "hateful" content. Ortner Decl., Ex. A at 1-2; Ortner Decl., Ex B at 1–2; Ortner Decl., Ex. C. at 1. Even without citing the Online Hate Speech Law, the Attorney General's letters improperly give it "force [and] effect," State Opp'n Req. Pre Mot. Hr'g., ECF No. 39 at 2, and demand everything necessary for the State to penalize the Investigated Networks. And the Attorney General's October 13 press release draws a clear connection between the letters, the Online Hate Speech Law, and the State's goal to punish or chill protected speech, in explicitly demanding that the Investigated Networks "stop the spread of hateful content" and "prohibit the spread of violent rhetoric." Ortner Decl., Ex. C. at 1.

The Attorney General's investigation letters directly contravene this Court's order. Even if the State believed the injunction unclear—as it argued in its letter opposing Plaintiffs' request for a pre-motion conference[3]—it should have sought "clarification . . . as to what the [injunction] meant." *Grasso v. Norton*, 520 F.2d 27, 37–38 (2d Cir. 1975). Instead, it hastily sent the investigation letters to the Investigated Platforms in violation of the clear terms of the preliminary injunction. Mem. and Op. at 20. This Court should not allow New York to give "force [and] effect," State Opp'n Req. Pre Mot. Hr'g., ECF No. 39 at 2, to its law while the injunction remains effective.

---

[3] State Opp'n Req. Pre Mot. Hr'g at 3.

**B.     The Attorney General's investigation letters and contemporaneous public threats of enforcement violate the express purpose of this Court's injunction.**

This Court enjoined the Online Hate Speech Law because the *possibility* of future investigation or enforcement is *inherently* coercive. Indeed, the Court explicitly observed that the statute would likely have "a profound chilling effect" on the creation, posting, and publishing of a substantial amount of protected speech. Mem. and Op. at 18 ("[T]he state's targeting and singling out of this type of speech for special measures certainly could make social media users wary about the types of speech they feel free to engage in without facing consequences from the state."). But the Attorney General's investigation letters impose the same First Amendment burden on protected speech that this Court aimed to prevent with its injunction.

The Attorney General's letters, particularly when paired with her press release, share the Online Hate Speech Law's goal of pressuring social media platforms to chill and/or remove protected speech. The letters include, for example, ten references to "removing" content, and repeatedly seek production of policies related to "identifying," "blocking," or banning users posting "hateful" content. Ortner Decl., Ex A at 1–2; Ortner Decl., Ex. B. at 1–2; Ortner Decl., Ex. C, at 1. This Court rightly admonished the State's efforts to adopt these types of "special measures" because they "could make social media users wary about the types of speech they feel free to engage in without facing consequences from the state." Mem. and Op. at 18. The Attorney General's investigation letters and press release perpetuate the very chilling effect this Court's injunction sought to prohibit.

That chilling effect is exacerbated by the fact that the Attorney General's investigation letters and press release, like the enjoined Online Hate Speech Law, use vague, overbroad, and subjective terms and phrases—such as "calls for violence," "dangerous," "hateful," "horrific," and "violent"—to describe disfavored content. Ortner Decl., Ex. A at 1; Ortner Decl., Ex. B. at 1;

Ortner Decl., Ex. C at 1–2. The letters, like the statute, force *all* networks and users to "steer far wider" than the State's definition of "hateful" to avoid the potential for legal recrimination. *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972). Again, this broad-based chilling effect is precisely what the Court's preliminary injunction is intended to prevent. Mem. and Op. at 18.

The State claims that these letters do not chill speech because a response is voluntary. State Opp'n Req. Pre Mot. Hr'g. at 1–2. But no "social media network" can ignore the fact that the Attorney General is New York's top law enforcement officer. When the Attorney General demands disclosure of content-moderation policies, responses to interrogatories, and removal of "hateful" content—lest her office take further action—the covered websites would be taking substantial risks to do otherwise. Ortner Decl., Ex. A at 1–2; Ortner Decl., Ex. B at 2; Ortner Decl., Ex. B. at 1. The Attorney General also gave the Investigated Networks only a week to respond to the State's investigative demands, pressuring a response and compliance. Ortner Decl., Ex. A; Ortner Decl., Ex. B.

Furthermore, the Attorney General touts the investigation letters among her recent efforts to "hold social media companies accountable and limit dangerous material." Ortner Decl., Ex. C at 2. This rhetoric is similar to the Attorney General's stated justifications and uses for the Online Hate Speech Law. *See, e.g.*, Verified Compl. ¶ 18 ("Attorney General James said the law was necessary because 'social media platforms provide an unchecked vehicle for [] dangerous and corrosive ideas to spread,' and it would allow her office to 'expand our work . . . to address this growing threat' from "dangerous and hateful platforms."); *see also* Verified Compl. ¶¶ 46–54. Enforcement of the injunction is therefore crucial to uphold this Court's reasoning and prevent the ongoing irreparable harm of networks' First Amendment rights. *See Elrod v. Burns*, 427 U.S. 347,

373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

The State argues that enforcing the injunction would cripple its ability to conduct investigations. State Opp'n Req. Pre Mot. Hr'g. at 3. But Plaintiffs seek to enforce this Court's injunction against investigations targeted at the policies, practices, methods, and actions regulated by the Online Hate Speech Law. The State's investigation letters cover the same territory and exert the same pressure on editorial discretion and protected speech as the Online Hate Speech Law. This Court should therefore grant Plaintiffs' request to enforce the terms of the preliminary injunction and prevent the State from continuing to disregard its order.[4]

---

[4] Plaintiffs' primary concern is ensuring the State's compliance with the February 14, 2023 Order Granting Preliminary Injunction. However, this Court has the discretion to impose additional judicial sanctions in order to "manag[e] and maintain[] order in the efficient and expeditious administration of justice." *Flaherty v. Filardi*, No. 03-CV-2167-LTS-HBP, 2009 WL 3762305, at *4 (S.D.N.Y. Nov. 10, 2009). Contempt is appropriate when the violated order "is clear and unambiguous," the "proof of noncompliance is clear and convincing," and there was no "diligent[] attempt[] to comply in a reasonable manner." *See, e.g., Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004).

## II.      Plaintiffs Have Standing to Enforce the Terms of this Court's Injunction.

Plaintiffs are entitled to enforce the preliminary injunction against the Attorney General to prevent further violations of its terms. First, Plaintiffs face a "reasonable expectation that the alleged violation will recur." *Mhany Mgmt., Inc. v. Cty. Of Nassau*, 819 F.3d 581 (2d Cir. 2016). The State's own words make this clear. According to the Attorney General's Office, it withdrew the Rumble investigation letter only because Rumble "already provided its content-moderation policies." Ortner Decl., Ex. E. But the State also continues to "wholeheartedly disagree with [Rumble's] analysis and the contentions in [its] letter." *Id.* As a result, it did not rescind the letters to the other Investigated Networks, and still claims authority to issue similar investigation letters to Plaintiffs and other social media networks at any time and for any reason. *Id.* Indeed, the State conspicuously did not express any intention to remove Rumble from its ongoing investigation into the Investigated Networks in its October 19 letter. *See* Ortner Decl. Ex. E.

Furthermore, the State's selective withdrawal suggests an effort "to avoid judicial scrutiny," *Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996), or "an attempt to avoid judicial resolution of the controversy," *Yassky v. Kings Cnty. Democratic Cnty. Comm.*, 259 F. Supp. 2d 210, 215 (E.D.N.Y. 2003). *See also United States v. New York City Transit Auth.*, 97 F.3d 672, 676 (2d Cir. 1996) (finding that a challenge was not moot when the "the change of policy was instituted on the eve of the lawsuit"). It is not "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Seidemann v. Bowen*, 499 F.3d 119, 128 (2d Cir. 2007). As a result, Defendant's withdrawal of its letter to Rumble is "not the type of voluntary cessation of challenged activity that calls for the court to stay its hand." *Yassky*, 259 F. Supp. 2d at 215. In light of the State's continued investigation and the ongoing threat of future investigations, Plaintiffs have standing to enforce the preliminary injunction.

13

Plaintiffs also have standing to enforce this Court's injunction to protect others from the investigations' chilling effects under the First Amendment's overbreadth doctrine, which grants "'an exception to ordinary standing requirements'" to allow litigants to protect the right of third parties from substantially overbroad speech restrictions. Mem. and Op. at 16–17 (quoting *Hobbs v. Cnty. of Westchester*, 397 F.3d 133, 155 (2d Cir. 2005)). When a law is overbroad, "'all enforcement of [it] is generally precluded.'" Mem. and Op. at 17 (quoting *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 104 (2d Cir. 2003)). This broad relief is necessary to prevent an overbroad law from "inhibit[ing] the constitutionally protected speech of third parties." *Hobbs*, 397 F.3d at 155. New York's law, as well as investigations under it, "could have a profound chilling effect on social media users and their protected freedom of expression." Mem. and Op. at 18. This is one of the reasons the Court enjoined all enforcement of the Online Hate Speech Law, not only as to Plaintiffs, but in all its applications.

In seeking to enforce the injunction to prevent third-party harm, Plaintiffs would advance common principles of overbreadth doctrine to protect the First Amendment rights of similarly situated third parties. Allowing the State to continue to investigate the same subject matter of the enjoined statute against other social media networks would run counter to and fatally undercut the overbreadth doctrine's goal of "'prevent[ing] the chilling of constitutionally protected conduct.'" Mem. and Op. at 17 (quoting *Farrell v. Burke*, 449 F.3d 470, 499 (2d Cir. 2006)). The Attorney General cannot be allowed to evade this Court's order by conducting investigations, in all but name, under the Online Hate Speech Law against other social media networks.  Even if Plaintiffs were not subject to the threat of possible future investigation—which they are—or no longer had an interest in their users' speech on their respective networks—which they certainly do— they nevertheless have standing to protect others' speech from the chilling effect of the State's

14

investigations. The Court may therefore grant Plaintiffs' motion to enforce the injunction to protect

all parties who are or may be subject to the Online Hate Speech Law's requirements, investigation,

and enforcement.

## **CONCLUSION**

This Court should grant Plaintiffs' motion to enforce the preliminary injunction.

DATED: December 1, 2023

Respectfully submitted,

/s/ Daniel Ortner

DANIEL M. ORTNER*
(Cal. Bar No. 329866)
JAMES M. DIAZ*
(Vt. Bar No. 5014)
FOUNDATION FOR INDIVIDUAL RIGHTS AND
   EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Telephone: (215) 717-3473
daniel.ortner@thefire.org
jay.diaz@thefire.org

BARRY N. COVERT
(N.Y. Bar No. 271118)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Ave Suite 120
Buffalo, NY 14202
Tel: 716 849 1333 x 365
bcovert@lglaw.com

*Attorneys for Plaintiff*
* Admitted *Pro Hac Vice*

## CERTIFICATE OF SERVICE

Plaintiffs' counsel confirms that a true and correct copy of the foregoing was served via the Court's electronic filing system on this day, December 1, 2023. Notice of this filing will be sent by operation of the Court's electronic filing system.

DATED: December 1, 2023

Respectfully submitted,

/s/ Daniel Ortner
DANIEL M. ORTNER*
(Cal. Bar No. 329866)
JAMES M. DIAZ*
(Vt. Bar No. 5014)
FOUNDATION FOR INDIVIDUAL RIGHTS AND
  EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Telephone: (215) 717-3473
daniel.ortner@thefire.org
jay.diaz@thefire.org

BARRY N. COVERT
(N.Y. Bar No. 271118)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Ave Suite 120
Buffalo, NY 14202
Tel: 716 849 1333 x 365
bcovert@lglaw.com

*Attorneys for Plaintiff*
* Admitted *Pro Hac Vice*