UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EUGENE VOLOKH, RUMBLE CANADA INC., and
LOCALS TECHNOLOGY INC.

                    Plaintiffs,

            - against -

LETITIA JAMES, in her official capacity as Attorney
General of New York,

                    Defendant.

No. 22 Civ. 10195 (ALC)

**DEFENDANT LETITIA JAMES' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION TO ENFORCE PRELIMINARY INJUNCTION**

LETITIA JAMES
Attorney General
State of New York
*Attorney for State Defendant*
28 Liberty Street
New York, NY 10005
(212) 416-8029

Seth J. Farber
  Special Litigation Counsel
Katherine Rhodes Janofsky
  Assistant Attorney General
Rick Sawyer
  Section Chief, Hate Crimes and Bias Prevention Unit

Of Counsel

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

PROCEDURAL HISTORY AND THE PRESENT MOTION ...................................... 4

STANDARD OF REVIEW .......................................................................................... 5

ARGUMENT ............................................................................................................... 7

      I.     The PI Order Is Limited to Precluding Enforcement of a Specific Statute. ........... 7

      II.    Accepting Plaintiffs' Interpretation of the Scope of the PI Order Renders
            an Otherwise Clear Order Ambiguous and Unenforceable .................................. 9

CONCLUSION ............................................................................................................ 14

# TABLE OF AUTHORITIES

CASES                                                                                          PAGE(S)

*Board of Regents v. Southworth*,
   529 U.S. 217 (2000)....................................................................................................11

*Capstone Logistics Holdings, Inc. v. Navarrete*,
   838 Fed. Appx. 588 (2d Cir. 2020)..............................................................................8

*CBS Broad. Inc. v. FilmOn Com Inc.*
   814 F.3d 91 (2d Cir. 2016)....................................................................................... 5-6

*Espinosa ex rel. Espinosa v. Shah*,
   No. 09 Civ. 4103(LAP), 2014 WL 6865664 (S.D.N.Y. Dec. 5, 2014) .....................6

*Gunn v. University Committee to End War in Viet Nam*,
   399 U.S. 383 (1970)....................................................................................................6

*Kennedy v. Warren*,
   66 F.4th 1199 (9th Cir. 2023) ...................................................................................11

*Latino Officers Ass'n City of N.Y., Inc. v. City of N.Y.*,
   558 F.3d 159 (2d Cir. 2009)........................................................................................6

*Next Invs., LLC v. Bank of China*,
   12 F.4th 119 (2d Cir. 2021) ..................................................................................6, 13

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*,
   369 F.3d 645 (2d Cir. 2004)........................................................................................5

STATE STATUTES

N.Y. Civ. Rts. L.
   § 79-n(3)...................................................................................................................12

N.Y. Civ. Prac. L. & R.
   § 2302......................................................................................................................12

N.Y. Exec. Law
   § 60, *et seq.* ..............................................................................................................11
   § 63............................................................................................................................3
   § 63(8)......................................................................................................................12

N.Y. Gen. Bus. Law
   § 394-ccc ......................................................................................................... passim

**FEDERAL STATUTES**

47 U.S.C.
  § 230.................................................................................................................................5

**RULES**

Fed. R. Civ. Pro.
  Rule 65(d) ........................................................................................................................7

Defendant LETITIA JAMES, in her official capacity as Attorney General of the State of New York ("A.G. James" or "State Defendant"), respectfully submits this memorandum of law, together with the Declaration of Rick Sawyer dated December 15, 2023 ("Sawyer Decl.") and the exhibits annexed thereto, in opposition to Plaintiffs' motion to enforce the preliminary injunction order (ECF Nos. 45-48). Plaintiffs' motion should be denied.

## PRELIMINARY STATEMENT

By their purported motion to enforce a preliminary injunction, Plaintiffs Eugene Volokh, Rumble Canada Inc. ("Rumble"), and Locals Technology Inc. (collectively "Plaintiffs") seek to expand existing injunctive relief granted in this case and demand that the Court intervene in unrelated State business and order additional injunctive relief substantially beyond the scope of the existing preliminary injunction in this case. In doing so, Plaintiffs argue that by enjoining enforcement of N.Y. Gen. Bus. Law § 394-ccc ("the Statute" or "Section 394-ccc"), this Court stripped A.G. James of any and all authority she has to act on a wide swath of issues that are not addressed by Section 394-ccc, even though she had that separate authority prior to the statute's enactment. Plaintiff's pursuit of this absurd reading of the preliminary injunction is unreasonable and entirely without merit. The motion to enforce must be denied.

Plaintiffs allege that they own and operate social media networks subject to the Statute and moved this Court for a preliminary injunction against enforcement of the Statute immediately following its effective date on December 22, 2022. (*See* ECF Nos. 8-11; *see also* Compl., ECF No. 1, at ¶¶ 5-6.) In their complaint, Plaintiffs' prayer for relief sought: "Preliminary injunctive relief against Defendant, prospectively enjoining enforcement of New York General Business Law § 394-ccc during the pendency of this litigation." (Compl. at ¶ 45(b).) On or about February 14, 2023, this Court issued a preliminary injunction precluding enforcement of the Statute ("the PI

Order"). (ECF No. 29.) The PI Order was specific in its scope: "Plaintiffs are entitled to a preliminary injunction prohibiting the enforcement of N.Y. Gen. Bus. Law § 394-ccc." *Id.*

In the immediate aftermath of terrorist attacks in Israel on October 7, 2023, calls for violence against Jewish and Muslim people and institutions have significantly increased, spreading rapidly on social media.[1] In response to these increased threats, A.G. James sent voluntary requests for information to several social media companies on October 12, 2023, including to Rumble Inc. (Sawyer Decl. Exs. 5 and 6.) The letters were not sent pursuant to any power set forth under the Statute nor for the purpose of compelling compliance with them. Indeed, nowhere in the October 12th letters (*Id.,* Ex. 5) or in A.G. James' October 13th press release (*Id.*, Ex. 6) is Section 394-ccc even mentioned, and there is no reference whatsoever to any of the Statute's coercive provisions (*i.e.*, monetary fines or compelled disclosure of information).

On October 18, 2023, counsel for Rumble wrote to A.G. James objecting to the October 12, 2023 information request letter and demanding that A.G. James rescind her information request letter as to Rumble, and rescind her other request letters to the other five social media companies. (*Id.*, Ex. 7.) The letter sent to Rumble was subsequently rescinded on October 19, 2023 (*id.*, Ex. 8), following Rumble's representation that documents relevant to the request had already been produced to A.G. James without objection a year earlier pursuant to a June 2022 subpoena issued in the wake of the livestreamed murder of 10 Black people at a grocery store in Buffalo, New York. (*Id.*, Ex. 7 at 2; *see also* Ex. 2.)

Plaintiffs now bring this baseless motion for an enforcement order, claiming that A.G. James' voluntary request for information on October 12, 2023 somehow violates the Court's PI

---

[1] *See e.g.* Frenkel, Sheera and Myers, Steven Lee, *"Antisemitic and Anti-Muslim Hate Speech Surges Across the Internet," The New York Times* (Nov. 15, 2023), at https://www.nytimes.com/2023/11/15/technology/hate-speech-israel-gaza-internet.html (last viewed on Dec. 15, 2023).

Order in this proceeding. (*See* Memorandum of Law in Support of Plaintiffs' Motion to Enforce Preliminary Injunction ("Pls. Enf. Mem."), ECF No. 46, at pp. 7-12.) But Plaintiffs' mischaracterize Section 394-ccc, which required quite specific actions by social media companies, such as creating a complaint mechanism for users and setting forth a policy for the handling of such complaints by users. In the present case, A.G. James's voluntary information requests to certain social media companies did not require the recipients to create a complaint mechanism, set forth a complaint response policy, or even respond to the letters at all. (Sawyer Decl. Ex. 5.)

In an October 20, 2023 press release, Plaintiffs' counsel said it is his "hope the court will intervene" in these requests, to prevent A.G. James alleged "continu[ing] violat[ion of] the injunction and the First Amendment, now and in the future." (Sawyer Decl. Ex. 9.)

Plaintiffs are wrong. The October 12, 2023 requests do not violate the PI Order. As demonstrated herein, voluntary requests for information are plainly within the general acts and duties of the Attorney General under N.Y. Exec. Law § 63, among other uncontested statutory provisions, and do not constitute or in any way implicate the enforcement of the Statute as specifically prohibited by the PI Order. The Court should likewise reject Plaintiffs' argument that the October 12, 2023 requests violate their First Amendment rights. (*See* Pls. Enf. Mem. at 10-12.) Plaintiffs cannot effectively bring a new First Amendment challenge to the Attorney General's letters, issued pursuant to her general authority, via this motion. Any such claim would plainly require an amendment to plaintiffs' complaint, which is solely and specifically focused on the enforcement of Section 394-ccc. Accordingly, the Court should not address plaintiffs' broad First Amendment arguments, which go far beyond the scope of the PI Order entered in this case.

In their improper request for judicial intervention, Plaintiffs rest their argument on a fundamental misreading of the PI Order and its scope. The proposed remedy sought by Plaintiffs

is essentially a demand for a new and far broader injunction to prevent A.G. James from undertaking any voluntary inquiries or perceived enforcement activity involving Plaintiffs, regardless of the statutory source of her authority; this is impermissible and substantially beyond the scope of the PI Order.

Nonetheless, Plaintiffs ask this Court not only to prohibit enforcement of the Statute, but to vastly expand the scope of the PI Order well beyond the limited area of social media company's user complaint mechanisms and policies concerning user complaints. Indeed, Plaintiffs' proposed order would preclude A.G. James from making *non-coercive* and *voluntary inquiries* into the business practices of social media companies concerning topics that are unrelated to complaint mechanisms or policies concerning user complaints, including criminal incitement of violence and specific threats.

Plaintiffs misconstrue the scope of the PI Order and offer no authority to justify their request. If the Court were to accept Plaintiffs' broad misreading as effectively blanket immunity for all social media companies from even voluntary inquiries into "the subject matter" of "hateful conduct," it would render the injunction improperly ambiguous—even with the removal of Plaintiff's egregious catch-all "among other things" from the activities prohibited—and thus, unenforceable under the law. Plaintiffs' broad interpretation would transform a preliminary injunction about Section 394-ccc into a sweeping ban on the Attorney General's day-to-day work and responsibilities that have nothing to do with the Statute at issue here, intervening and effecting State matters far beyond the scope of the case in controversy and permissible relief.

Plaintiffs' present motion is without merit and should be denied.

## <u>PROCEDURAL HISTORY AND THE PRESENT MOTION</u>

Plaintiffs commenced this action by filing a Complaint on December 1, 2022. (ECF No.

1.) The Complaint asserts five causes of action, including facial and as-applied challenges arising under the First and Fourteenth Amendments as alleged content- and viewpoint-based regulation of speech (Count I), compelled speech (Count II), overbreadth (Count III), vagueness (Count IV), and a statutory preemption challenge under 47 U.S.C. §230 (Count V). (ECF No. 1.)

On or about December 5, 2022, Plaintiffs moved for a preliminary injunction to enjoin enforcement of Section 394-ccc. (ECF Nos. 8-11.) On or about December 13, 2022, A.G. James filed opposition papers to the motion for preliminary injunction. (ECF Nos. 20-21). Plaintiff filed reply papers on December 15, 2023 (ECF No. 23). The Court heard oral argument of the parties on or about December 21, 2022. On February 14, 2023, the Court issued the PI Order. (ECF No. 29). A.G. James appealed the Court's order. That appeal is fully briefed and argument has been scheduled for February 16, 2024. While the appeal is pending, this Court stayed proceedings (ECF No. 37).

On October 25, 2023, Plaintiffs filed a pre-motion conference request letter with respect to a proposed motion to enforce the PI Order (ECF No. 38). On October 30, 2023, A.G. James filed a letter in response (ECF No. 39). By Order dated November 9, 2023, the Court set forth a briefing schedule for the present motion (ECF No. 41) and modified the briefing schedule after a joint request of counsel for all parties by Order dated November 13, 2023 (ECF No. 43).

**STANDARD OF REVIEW**

"A party who violates an injunction entered by the district court faces the threat of both civil and criminal contempt." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004). A court may hold a party in contempt if the moving party shows that "(1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to

comply in a reasonable manner." *CBS Broad. Inc. v. FilmOn Com Inc.* 814 F.3d 91, 98 (2d Cir. 2016); *see also Latino Officers Ass'n City of N.Y., Inc. v. City of N.Y.*, 558 F.3d 159, 164 (2d Cir. 2009).

In seeking to enforce an order, even where a showing of bad faith is not required, a movant must show that the subject order has been violated. *Espinosa ex rel. Espinosa v. Shah*, No. 09 Civ. 4103(LAP), 2014 WL 6865664, at *11 (S.D.N.Y. Dec. 5, 2014).

"An injunction is sufficiently clear and unambiguous if it leaves no doubt in the minds of those to whom it was addressed precisely what acts are forbidden." *CBS Broad. Inc.*, 814 F.3d at 98 (internal quotation, omission, and citation omitted). "[A] contempt order is inappropriate if there is a fair ground of doubt as to the wrongfulness of the alleged contemnor's conduct. Ambiguities in the order's language and persisting questions about legal limits on the court's power can each defeat a contempt motion." *Next Invs., LLC v. Bank of China*, 12 F.4th 119, 131 (2d Cir. 2021) (internal quotations, brackets, and citations omitted).

In *Gunn v. University Committee to End War in Viet Nam*, 399 U.S. 383, 388-9 (1970), the Supreme Court explained the significance of requiring injunctions be written with specific terms, and emphasized the "vital" importance of specific terms for injunctive orders:

> Rule 65(d) of the Federal Rules of Civil Procedure provides that any order granting an injunction "shall be specific in terms" and "shall describe in reasonable detail * * * the act or acts sought to be restrained." As we pointed out in *International Longshoremen's Assn. Local 1291 v. Philadelphia Marine Trade Assn.*, 389 U.S. 64, 74, 88 S.Ct. 201, 206, 19 L.Ed.2d 236, the "Rule * * * was designed to prevent precisely the sort of confusion with which this District Court clouded its command." An injunctive order is an extraordinary writ, enforceable by the power of contempt. "The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one. Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid." *Id.*, at 76, 88 S.Ct., at 208.

That requirement is essential in cases where private conduct is sought to be enjoined, as we held in the Longshoremen's case. **It is absolutely vital in a case where a federal court is asked to nullify a law duly enacted by a sovereign State**. Cf. *Watson v. Buck*, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416."

(emphasis added).

## ARGUMENT

### I.   The PI Order Is Limited to Precluding Enforcement of a Specific Statute.

In the PI Order, the Court issued a preliminary injunction "prohibiting the enforcement of N.Y. Gen. Bus. Law § 394-ccc." (ECF No. 29 at 20.) As this Court described it, the Statute[2] "has two main requirements: (1) a mechanism for social media users to file complaints about instances of "hateful conduct" and (2) disclosure of the social media network's policy for how it will respond to any such complaints." (*Id*. at 2.) In addition, "[t]he law also empowers the Attorney General to investigate violations of the law and provides for civil penalties for social media networks which "knowingly fail[ ] to comply" with the requirements." (*Id*. at 5.)

Enforcement of Section 394-ccc therefore manifests as an exercise of A.G. James' *coercive* investigatory or subpoena powers for the purpose of determining a violation of the Statute's particular requirements about complaint mechanisms and disclosures of policies regarding responding to complaints, or in the issuance of a civil penalty for failure to knowingly comply with the Statute. By its own terms, the scope of the PI Order is limited to enforcement of only Section 394-ccc. It is axiomatic that "'[t]o comply with the specificity and clarity requirements' of Rule 65(d) 'an injunction must be specific and definite enough to apprise those within its scope of the

---

[2] Specifically, Section 394-ccc(5) provides that:

Any social media platform that knowingly fails to comply with the requirements of this section shall be assessed a civil penalty for such violation by the attorney general not to exceed one thousand dollars. Each day such offense shall continue shall constitute a separate additional violation. In determination of any such violation, the attorney general shall be authorized to take proof and make a determination of the relevant facts and to issue subpoenas in accordance with the civil practice law and rules.

conduct that is being proscribed.'" *Capstone Logistics Holdings, Inc. v. Navarrete*, 838 Fed. Appx. 588, 590 (2d Cir. 2020) (summary order) (quoting *S.C. Johnson & Son, Inc. v. Clorox Co.,* 241 F.3d 232, 240-1 (2d Cir. 2001) (quotation marks omitted)).

Despite Plaintiffs' arguments to the contrary, the PI Order simply does not extend to any other power, authority, or conduct by A.G. James. Here, no entity or person has been investigated or subpoenaed in connection with determining compliance with Section 394-ccc, and no entity or person has been fined in connection therewith. Indeed, Plaintiffs make no allegation that any such activity has occurred. (*See* Pls. Enf. Mem. at pp. 1-15.) Thus, the Statute has not been given force or effect, and no compliance of any sort has been compelled or coerced.

Plaintiffs argue that "the Attorney General's investigation letters impose the same First Amendment burden on protected speech that this Court aimed to prevent with its injunction" and "when paired with her press release, share the Online Hate Speech Law's goal of pressuring social media platforms to chill and/or remove protected speech." (*See* Pl. Enf. Mem. at pp. 10-12). But Plaintiffs mischaracterize Section 394-ccc, which required quite specific actions on the part of social media companies (creating a complaint mechanism for their users and setting forth a policy concerning the handling of such complaints by their users). And A.G. James's voluntary information requests do not require any recipient of those letters to create a complaint mechanism, set forth a complaint response policy, or even respond to the letters at all (Sawyer Decl. Ex. 5.) Indeed, the voluntary nature of these requests is shown by A.G. James's withdrawal of the letter at Rumble's request. (*Id.*, Ex. 8.)

Plaintiffs' hyperbolic contentions that A.G. James's "letters and press release perpetuate the very chilling effect this Court's injunction sought to prohibit" and "force *all* networks and users to steer far wider than the State's definition of hateful to avoid the potential for legal recrimination"

8

(Pl. Enf. Mem. at pp. 10-11 [emphasis in original]) are of no moment and well beyond the scope of the PI Order.

Moreover, the core issue with respect to Plaintiffs' enforcement motion is whether Section 394-ccc and any investigation conducted *pursuant to it* has been implicated. There have been no threats of imposing fines for not providing a complaint mechanism or for failing to disclose a complaint response policy, nor has there been any further investigation of same. Instead, Plaintiffs make an untenable leap to argue that voluntary inquiries constitute "taking proof" pursuant to the Statute and that "[e]nforcement of the injunction is therefore crucial to uphold this Court's reasoning and prevent the ongoing irreparable harm of networks' First Amendment rights." (Pl. Enf. Mem. at p. 11.)

But the Court did not enjoin voluntary inquiries from public officials at all, let alone voluntary inquiries about topics unrelated to Section 394-ccc's specific requirements. The Court enjoined enforcement of a specific statute. Insofar as A.G. James has not taken any action to enforce Section 394-ccc, Plaintiffs cannot demonstrate a violation of the PI Order and their present motion should be denied.

## II.    Accepting Plaintiffs' Interpretation of the Scope of the PI Order Renders an Otherwise Clear Order Ambiguous and Unenforceable

Plaintiffs contend that the present motion is not merely about enforcing an injunction against the enforcement of a particular statute with specific coercive powers, but seeks what amounts to a blanket subject matter immunity from even informal, non-coercive inquiries into anything that they decide might be related to Section 394-ccc: "Plaintiffs seek to enforce this Court's injunction against *investigations targeted at the policies, practices, methods, and actions regulated* by the Online Hate Speech Law. The State's investigation letters *cover the same territory*

and exert the same pressure on editorial discretion and protected speech as the Online Hate Speech Law." (Pl. Enf. Mem. at p. 12 [emphasis supplied].)

Plaintiffs' proposed order goes even further afield and proposes that A.G. James "direct the State's officers, agents, successors, employees, and others acting in concert with her… to refrain from, *among other things, informally … requesting … information … regarding subjects that fall within the scope of that statute*[.]" (ECF No. 48 [emphasis supplied].) Plaintiff's proposed order also includes overly broad and vague language enjoining A.J. James from "formally *or informally* … requesting … information … from social media networks[.]" (*Id.* [emphasis supplied].) But Section 394-ccc only involves requirements that social media networks maintain user complaint reporting facilities and set forth their complaint handling policies and provides for fines or subpoenas to enforce those complaint provisions, none of which is implicated by A.G. James's voluntary requests here. Moreover, the PI Order is limited only to *enforcement* of the Statute that, by its own terms, is limited to concerns involving social media platform users' complaint reporting mechanisms.

While Plaintiffs allege no enforcement of Section 394-ccc, Plaintiffs broadly construe the PI Order as not merely restoring the *status quo ante* of the world where Section 394-ccc was never enacted, but as affirmatively enjoining A.G. James from making voluntary requests for information about "websites' policies, practices, methods, and actions regarding the subject matter of the Online Hate Speech Law" (*see* Plaintiffs' Pre-Motion Conference Request Letter ("Letter"), ECF No. 38, at 3) and precluding A.G. James from engaging in the powers of her office that exist and existed regardless of whether Section 394-ccc became law.

Plaintiffs contend that this prohibition extends not just to compliance with the two prongs of Section 394-ccc, but to *any* inquiry that would touch upon "hateful conduct" as defined under

the statute, including "calls for violence." (*Id.* at 3.) Indeed, Plaintiffs' reading is so broad that it amounts to a prohibition against any hypothetical "chilling effects" on any speech that may or may not have resulted from the letters and press release. (*Id.* at 3.)

Plaintiffs' reading of the PI Order is therefore wrong on its face. A.G. James has numerous statutory bases upon which to make formal and informal inquiries with respect to her duties as the head of the State's Department of Law and as New York's chief legal officer and chief law enforcement officer, as a matter of her enumerated statutory powers. *See, e.g.,* N.Y. Exec. L. §§ 60, *et seq.* And when the Attorney General makes voluntary requests for information from social media platforms, such requests are well within her general duties and authority. The government is entitled to "advocate and defend its own policies." *Board of Regents v. Southworth*, 529 U.S. 217, 229 (2000). Such advocacy is clearly permissible where, as here, the Attorney General's communication contained no reference to "adverse consequences," was not understood by the recipients "as a threat," and was not followed up by further demands for action. *Kennedy v. Warren*, 66 F.4th 1199, 1208-12 (9th Cir. 2023).

Indeed, prior to the present motion, Rumble did not challenge A.G. James authority when, on or about June 17, 2022, the Office of the Attorney General served a subpoena duces tecum upon Rumble making 22 separate requests, including but not limited to its content moderation practices and interactions with users that, in the present motion at least, Plaintiffs purport to construe as "regarding the subject matter of the Online Hate Speech Law." (*See* Sawyer Decl. at ¶¶ 5, 6, Exs. 2-4.) Notably, that subpoena was issued approximately one month after the murder of 10 Black people and the injury of three others at a grocery store in Buffalo, New York in May of 2022, approximately six months before the effective date of the Statute, and approximately eight months before the PI Order was issued on February 14, 2023. (*Id.* at ¶ 7.) Moreover, that subpoena was

issued pursuant to A.G. James's authority under N.Y. Exec. L. § 63(8),[3] N.Y. Civ. R. L. § 79-n(3),[4] and N.Y. C.P.L.R. §2302.[5] (*Id.*, Ex. 2.)

For its part, Rumble did not raise objections to the subpoena and provided responsive documents. (*Id.* at ¶ 6, Exs. 2-4.)

Nonetheless, Plaintiffs now argue that because the enforcement of *a later-enacted statute* was enjoined by this Court in the PI Order, A.G. James somehow effectively loses any and all *other* statutory authority she has to act on any matter that Plaintiffs believe is related to the subject matter of Section 394-ccc, even though she had that separate authority prior to the enactment of

---

[3] N.Y. Exec. L. § 63(8) provides, in relevant part:

> Whenever in his judgment the public interest requires it, the attorney-general may, with the approval of the governor, and when directed by the governor, shall, inquire into matters concerning the public peace, public safety and public justice. . . . The attorney-general, his deputy, or other officer, designated by him, is empowered to subpoena witnesses, compel their attendance, examine them under oath before himself or a magistrate and require that any books, records, documents or papers relevant or material to the inquiry be turned over to him for inspection, examination or audit, pursuant to the civil practice law and rules. If a person subpoenaed to attend upon such inquiry fails to obey the command of a subpoena without reasonable cause, or if a person in attendance upon such inquiry shall, without reasonable cause, refuse to be sworn or to be examined or to answer a question or to produce a book or paper, when ordered so to do by the officer conducting such inquiry, he shall be guilty of a misdemeanor. It shall be the duty of all public officers, their deputies, assistants and subordinates, clerks and employees, and all other persons, to render and furnish to the attorney-general, his deputy or other designated officer, when requested, all information and assistance in their possession and within their power. . . . Any officer participating in such inquiry and any person examined as a witness upon such inquiry who shall disclose to any person other than the governor or the attorney-general the name of any witness examined or any information obtained upon such inquiry, except as directed by the governor or the attorney-general, shall be guilty of a misdemeanor.

[4] N.Y. Civ. R. L. § 79-n(3) provides:

> Whenever there shall be a violation of this section, an application may be made by the attorney general in the name of the people of the state of New York to a court or justice having jurisdiction for an injunction to enjoin and restrain the continuance of such activity. In connection with any such application, the attorney general is authorized to take proof and determine the relevant facts and to issue subpoenas in accordance with the civil practice law and rules.

[5] N.Y. C.P.L.R. § 2302 provides, in relevant part:

> Authority to issue. (a) Without court order. Subpoenas may be issued without a court order by the clerk of the court, a judge where there is no clerk, the attorney general, an attorney of record for a party to an action, an administrative proceeding or an arbitration, an arbitrator, a referee, or any member of a board, commission or committee authorized by law to hear, try or determine a matter or to do any other act, in an official capacity, in relation to which proof may be taken or the attendance of a person as a witness may be required[.]

Section 394-ccc and even though *only* enforcement of Section 394-ccc is enjoined. This argument is patently absurd.

Plaintiffs' misreading of the PI Order would extend far beyond enforcement of Section 394-ccc and preclude A.G. James from exercising her authority to the point of even merely making *voluntary inquiries* into the business practices of social media companies—including criminal incitement of violence and specific threats—notwithstanding that, prior to the PI Order, Plaintiff Rumble did not raise objections to a subpoena to produce similar materials.

If the Court were to accept Plaintiffs' broad reading of the PI Order as effectively granting blanket immunity for all social media companies from even voluntary inquiries into "the subject matter" of "hateful conduct," it would render the PI Order improperly ambiguous and, thus, unenforceable by an application for contempt of a clear and unambiguous order.[6] Plaintiffs' broad interpretation would transform a preliminary injunction about Section 394-ccc into a sweeping ban on the Attorney General's day-to-day work and responsibilities that have nothing to do with the statute at issue. Extending the PI Order to the point of precluding *non-coercive* voluntary requests for information even tangentially related to the subject of the statute, as Plaintiffs argue, certainly creates uncertainty as to the scope of the PI Order.[7]

---

[6] "A clear and unambiguous order is one that leaves no uncertainty in the minds of those to whom it is addressed, who must be able to ascertain from the four corners of the order precisely what acts are forbidden. Thus, a contempt order is inappropriate if there is a fair ground of doubt as to the wrongfulness of the alleged contemnor's conduct. Ambiguities in the order's language and persisting questions about legal limits on the court's power can each defeat a contempt motion." *Next Invs.*, 12 F.4th at 131 (internal quotations, brackets, and citations omitted).

[7] In addition, Plaintiffs have argued—and this Court has held—that "hateful conduct" contains "indefinite[]" key terms. (PI Order at 9-10.) Reading this injunction to extend to any inquiry by A.G. James into "hateful conduct" would therefore not only be wrong and vastly beyond the scope of the PI Order, but would also render the injunction similarly indefinite and thus unenforceable on the Court's own determination.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion to enforce the preliminary injunction order should be denied in its entirety.

Dated:  New York, New York          Respectfully submitted,
        December 15, 2023

                                       LETITIA JAMES
                                       Attorney General
                                       State of New York
                                       *Attorney for State Defendant*
                                       28 Liberty Street
                                       New York, New York 10005

                                       By:  /s/ Seth J. Farber_____
                                       Seth J. Farber
                                       Special Litigation Counsel
                                       (212) 416-8029
                                       Seth.Farber@ag.ny.gov

                                       Katherine Rhodes Janofsky
                                       Assistant Attorney General
                                       (212) 416-8621
                                       Katherine.Janofsky@ag.ny.gov

                                       Rick Sawyer
                                       Section Chief, Hate Crimes and Bias Prevention Unit
                                       (212) 416-6182
                                       Richard.Sawyer@ag.ny.gov